Lewis Parkhurst & others, trustees, *vs.* M. Francesca G. Ginn & others.

Middlesex.    March 13, 14, 1917. — September 13, 1917.

Present: Rugg, C. J., De Courcy, Crosby, Pierce, & Carroll, JJ.

*Devise and Legacy. Trust,* Administration, Implied power of trustee to change investments. *Capital and Income. Tax. Equity Jurisdiction,* Bill for instructions. *Interest.*

A will, which in many different clauses referred unmistakably to a single trust fund, contained the following direction to the trustees to whom the residue of the testator's estate was devised and bequeathed, the World Peace Foundation there named being a charitable corporation which the testator in his lifetime had caused to be incorporated: "I now authorize and instruct my Trustees to pay over annually, or oftener if business convenience may permit, to the said World Peace Foundation, the income, as nearly as said Trustees can conveniently reckon it, of Eight Hundred Thousand Dollars ($800,000.00), but not exceeding Forty Thousand Dollars ($40,000.00) per year." The estate in the hands of the trustees amounted to more than $2,000,000. Upon a bill by the trustees for instructions, it was *held* that the trust was to be administered as one fund and that the trustees were not to set apart any of the trust property as a separate fund for the benefit of the World Peace Foundation.

Upon the same bill for instructions, in answer to a question as to the method by which the amount or the rate of income payable to the World Peace Foundation was to be reckoned, it was *held* that the annual payment to the World Peace Foundation for any year should be the proportionate part of the total net income of the fund which $800,000 bore to the entire principal of the fund, but not exceeding $40,000 annually, and that the gift was not a mere annuity of $40,000 a year which it would have been a simple thing for the testator to create, if that had been his purpose; so that the method of computation would be to find the rate of the net income returned by the entire fund during the year in question and to compute the income of $800,000 at that rate, but in no event to exceed $40,000 for the year.

Upon the same bill for instructions it appeared that the amount of unproductive real estate was small compared with the total amount of the fund, that the income of the fund met all the requirements of the annuities provided for by the will and was likely in the future to provide the maximum annual payment to the World Peace Foundation, and it was *held* that in reckoning the amount of income payable to the World Peace Foundation in any year, the entire proceeds of the sales of vacant real estate should be treated as a part of the principal of the trust property and should not be apportioned between principal and income.

Upon the same bill for instructions it was *held*, that the premiums on the bonds given by the trustees, as authorized to be paid by R. L. c. 150, § 15, should be paid out of income and not out of principal.

Upon the same bill for instructions it was *held*, that, the World Peace Foundation being a charity, as decided in *Parkhurst* v. *Treasurer & Receiver General, post*, 196, the gift to it was not subject to a legacy and succession tax, and that the ordinary annual taxes were to be paid as a part of the expenses of the trust to be deducted before the net income could be ascertained.

Upon the same bill for instructions it was *held* that under St. 1912, c. 678, § 1, as amended by St. 1913, c. 498, relating to legacy and succession taxes, which provides that "All taxes under this act shall be paid out of and chargeable to capital and not income, unless otherwise provided in a will . . . or other instrument creating the grant or gift;" the will under interpretation containing no provision otherwise, the legacy and succession taxes on the several annuities which the trustees were directed to pay were payable out of the capital fund of the trust, that being the only capital out of which such taxes could be paid, and that other taxes assessed against the annuities were to be borne by and paid out of the annuities on which they were levied, there being nothing in the will under interpretation to the effect that the annuities should be paid in full free from all taxes.

In a bill for instructions trustees under a will are not entitled to be instructed as to payments made by the executors of the will for taxes or otherwise and allowed by the Probate Court in the executors' accounts.

Upon the bill for instructions named above the trustees asked to be instructed as to the deductions from income, capital or otherwise of the amount of taxes upon the interest of the World Peace Foundation in the property of the testator situated in the State of Minnesota, which were paid by the executors and charged by the executors "against capital of the estate, and no part thereof against income." It did not appear that the trustees had paid or had been asked to pay this tax. It appeared that the tax had been paid by the executors, that the payment belonged in their account and that the executors had filed already at least one account, which had been allowed, and it was *held*, that the fund out of which this tax was payable was a matter to be settled in passing upon the account of the persons who rightly had paid the tax out of properties and funds in their hands, and that the trustees had received only the residue of the estate after the payment had been made, and therefore it did not appear that the trustees had any occasion or any right to request instructions in regard to the matter.

Upon the same bill for instructions it was *pointed out* that by the express terms of the trust the testator directed that the annuities to his family should be preferred to all other legacies in case of a deficiency and that in case of necessity they should be a charge upon both principal and income, although this did not appear to be material in the present state of the trust.

Upon the same bill for instructions it was *held* that, as stated above, the entire trust fund was to be treated as a unit and that all the annuities were to be paid out of it instead of being supported by the establishment of separate funds.

In the same case a like conclusion was reached in regard to certain shares in the corporation owning the business formerly carried on by the testator which were to be kept available for two sons of the testator.

In the same case the court declined to instruct the trustees as to the income which in a contingency might be payable to one or both of the sons of the testator,

there being no present obligation on the part of the trustees to set apart any income for this purpose, and a broad discretion as to the management of the trust being vested in the trustees with which this court would not undertake to interfere.

In the same case it was *pointed out* in regard to the income to be paid to the World Peace Foundation that there was no provision in the terms of the trust for making up a deficiency in one year out of the excess of another year.

In the same case it appeared that the article of the will devising and bequeathing all the residue of the testator's property to the trustees to constitute a general fund, as modified by a codicil, provided that, "If and when (after the payment of the foregoing gifts and legacies and the reserve of sufficient trust funds to provide for outstanding annuities and other gifts of income, absolute and contingent,) principal of my estate becomes available for distribution, I authorize and instruct my Trustees to make gifts and to dispose of such principal as follows:" Then followed gifts of $10,000 each to three institutions, one of which was the college of which the testator was a graduate, and a gift to a person in "recognition of what she has for a long time been doing [for one of the institutions], practically without compensation." A further contingent gift of $15,000 was made to that institution payable within three years after the first. The possible maximum of the gifts was $50,000 and the total amount of those immediately payable was $35,000. If these legacies all should be paid, the trust fund still would slightly exceed $2,000,000. The annual income was more than $100,000 a year. A purchase of annuities out of the trust fund sufficient to meet the requirements of the will would leave in the fund more than $800,000, the income of which up to $40,000 was required for the payments to the World Peace Foundation. Under these and all the other circumstances that appeared on the record, it was *held* that the time had arrived for the payment of the legacies mentioned above which were presently payable and that they should not be withheld longer.

In the same case it was *held* that, as these legacies became due only upon the happening of the contingency that principal of the estate had become available for such payment after satisfying all prior legacies, absolute and contingent, that event should be considered to have happened on April 11, 1916, and not before, and that therefore the absolute legacies, amounting to $35,000, should bear interest from that date at the rate of four per cent per annum in accordance with St. 1915, c. 151, § 2.

In the same case it was *held* that the trustees should retain for the time being as a part of the capital of the fund the balance of the accumulated cash, whether of principal or income, and that they should not distribute at present any part of the final residue of the estate.

In the same case it was *held,* that, although the power to invest and reinvest the trust fund was not conferred expressly upon the trustees, this power was conferred by necessary implication, because, in order to perform the duties required of them, the trustees necessarily must invest and keep invested the trust funds safely and productively in such property and securities as are recognized as appropriate for trust funds or were authorized by the will.

In the same case it was *held,* that certain annuities provided by the testator for two of his children clearly were intended for the life of each and for no less period.

BILL IN EQUITY, filed in the Supreme Judicial Court on July 27, 1916, by the trustees under the will of Edwin Ginn of Winchester,

who died on January 21, 1914, leaving a will dated July 20, 1911, with a codicil dated February 17, 1912, for instructions.

The case came on to be heard before *Pierce,* J., who at the request of the parties reserved it upon the pleadings and the master's report for determination by the full court.

The specific instructions requested by the trustees were as follows:

"First: Whether the plaintiffs shall set aside any of the trust property as a separate fund to be held by them for the benefit of the World Peace Foundation, as provided by the will, and if so, what property shall be so set aside and held.

"Second: In what manner and by what method is the amount or rate of income payable to the World Peace Foundation under said will to be reckoned; whether it shall be that amount of income received from a specified part of the trust property designated for that purpose, or shall be the average rate of income received on the whole trust property, or any specified part thereof, of which the sum of $800,000 is to be deemed a fractional part, or whether it shall be reckoned in any other manner.

"Third: Whether in the reckoning of the income payable to the World Peace Foundation under said will, proceeds of the sales of vacant real estate shall be treated as principal of the trust property, or whether the same shall be apportioned between principal and income.

"Fourth: Whether in the reckoning of the income payable to the World Peace Foundation under said will, the premiums paid upon the bonds of the executors and of the trustees under the will shall be charged against principal or against income.

"Fifth: Whether in the reckoning of the income payable to the World Peace Foundation under said will, any deductions shall be made on account of local annual taxes or of inheritance taxes, heretofore assessed upon and paid by the representatives of this estate from the property in their hands, or which shall hereafter be assessed upon the plaintiffs and paid by them thereon, and, if so, on what basis such deductions shall be reckoned.

"Sixth: Whether the plaintiffs shall deduct from the several annuities given by the will the amount of Massachusetts inheritance taxes and other taxes assessed and paid thereon, or whether the same are payable from the capital of the estate, or any part thereof, or are to be dealt with in any other manner.

"Seventh: Whether the plaintiffs shall deduct from the income payable under the will to the World Peace Foundation the amount of any taxes upon the interest of the said foundation, under the will, paid to the State of Minnesota, or whether the same were payable from the capital of the estate, or any part thereof, or are to be dealt with in any other manner.

"Eighth: Whether the annuities given by said will are a charge upon both principal and income of said estate, and whether a fund is to be erected by the plaintiffs for the support of said annuities, and if so, what property is to be so set aside, or otherwise designated and held for the protection of the respective annuitants, and what amount thereof, and in what manner shall the same be invested by the plaintiffs.

"Ninth: Whether the plaintiffs are to set aside and designate shares in Ginn and Company or other property, to be held for the purposes designated in article fifteen, clause eight of the will, for the benefit of the testator's sons, Maurice or Edwin, or either of them, and if so, what amount of property is to be so set aside and held, and for what period shall the same be held.

"Tenth: Whether the plaintiffs are to reserve and set aside, or designate in any manner, any portion of the income from the trust estate, and hold the same for the purposes stated in article fifteen, clause eight of the will, for the benefit of the testator's sons, Maurice or Edwin, or either of them, and if so, what amount of income is to be so set aside and held, and for what period shall the same be held.

"Eleventh: Whether any amount is payable to the World Peace Foundation from the accumulated income of the trust now in possession of your plaintiffs, on account of income due to said foundation, accumulated and remaining unpaid for the year 1914, or for the year 1915, down to January 21, 1916.

"Twelfth: Whether the plaintiffs shall pay from the cash now in their hands and possession the amounts given by the will to the legatees named in article fifteen, clause thirteen thereof, as modified by the codicil, and, if so, from what date interest thereon, if any, shall be paid to the respective legatees.

"Thirteenth: Whether the amount of said legacies contained in article fifteen, clause thirteen, in case the court shall decide that the same be not now paid, shall be held by the plaintiffs as a part

of the whole residuary trust fund, or shall be set aside in a separate fund and held for the benefit of said legatees pending the time when the court shall decree that the same may be paid over, and if so, as of what date shall the same be set aside and shall interest run thereon, or shall the same be dealt with in any other manner.

"Fourteenth: Whether the remaining cash principal of the trust fund, or any part thereof, now in the possession of the trustees, shall be paid over to the residuary legatees, and if not, in what manner the same shall be held and managed by the plaintiffs.

"Fifteenth: Whether the accumulated cash income, or any part thereof, now in the possession of the trustees, shall be paid over to the residuary legatees or dealt with in any other manner.

"Sixteenth: Whether the plaintiffs, as trustees, have any power under the will to invest and reinvest the trust property, or any part thereof, and if not, whether the court will grant such power and authority, and in so doing will define the extent and limits of the power as granted.

"Seventeenth: Whether the gifts to Marguerita and Edwin under article fifteen, clause five, are for their lives respectively, or for any other period."

*F. W. Knowlton,* for the trustees, stated the case.

*A. Lord,* for M. Francesca Grebe Ginn and Antonia Grebe.

*G. C. Coit,* for Maurice E. Ginn.

*A. D. Hill,* for the World Peace Foundation.

*J. P. Russell,* (*J. T. Pugh* with him,) for the trustees of Tufts College.

*R. B. Coolidge,* for Westbrook Seminary.

*C. R. Clapp & C. H. Walker,* for the Charlesbank Homes.

*W. H. Dunbar,* for the Ingleside Home and Mrs. Plummer.

*H. S. Riley,* for Marie Emerson Riley, submitted a brief.

*T. W. Proctor,* guardian *ad litem* of minor defendants, *pro se.*

RUGG, C. J. This is a petition by the trustees under the will of Edwin Ginn for instructions as to certain of their duties in the execution of their trust. The estate in their hands is something in excess of $2,000,000. Edwin Ginn died on January 21, 1914. He was the founder and senior member of the firm of Ginn and Company, publishers of educational and other books, and most of his estate was invested in that firm. The scheme of his will, shortly stated, is this: Legacies of different sums, aggregating about

$200,000, are given by the first fourteen articles, all of which have been paid in full by the executors. By article sixteen a power of sale is conferred upon the executors and the trustees, and by article seventeen the executors are appointed. This petition does not relate directly to any of these articles. The trust is created by article fifteen, which contains fifteen clauses. By the first seven clauses annuities are given to various persons, principally to members of the testator's family, amounting at present to $47,400, and having a maximum possibility of $51,000. Chief among these is an annuity of $25,000 to his widow for life. By clause eight provision is made in considerable detail for the transfer under certain conditions to each of the testator's two sons of one thousand shares in the firm of Ginn and Company and for the sale by the trustees to each of these sons of a further number of shares, so that each may have an ownership equal to one twelfth of the entire capital of that publishing house. By clause nine provision is made for the retention of the Ginn homestead in Winchester as a part of the trust so long as occupied by his children or grandchildren, a life estate having been created in it for the benefit of his widow by another article. By clause ten direction is given to the trustees respecting the carrying as a part of the body of the trust of certain shares in Ginn and Company, pursuant to powers, rights and options in its partnership articles. By clause eleven provision is made for the World Peace Foundation. By clause twelve the continued investment of the present proportional part of the trust fund in Ginn and Company is expressly declared to be safe and proper. By clause thirteen, as modified by the codicil, pecuniary legacies amounting immediately to $35,000 and having a possible maximum aggregate of $50,000, are given out of the principal of the fund, after adequate provision has been made for the foregoing annuities and gifts of income. By clause fourteen the residue of the estate is divided among certain educational and charitable institutions. Clause fifteen relating to anticipations and deduction of legacies, is not involved in the issues here raised.

1. The first request for instructions is whether the trustees shall set apart any of the trust property as a separate fund for the benefit of the World Peace Foundation. The general plan of article fifteen does not manifest a design for division of the body of the trust into distinct funds for the support of each

beneficiary or of several groups of beneficiaries. The gift to the trustees, although most comprehensive of the entire residue of the property of the testator, nevertheless is single in nature. It is to the persons named "in trust, with the following powers and for the following purposes," succeeded first by the clauses establishing annuities and then by the one for the World Peace Foundation. The form of the gift, so far as it goes, indicates that the fund is a unit.

Other parts of the will confirm the interpretation that the trust is to be administered as one fund. In article two the testator directed that, if the homestead estate is sold during the life of his wife, the proceeds after her death shall "constitute a part of the trust fund hereinafter provided for the general residue of my estate." In article fifteen, by clauses three and four, gifts are made "from the principal of the trust fund," by clause four, a gift out of the income of the "trust fund," and by clause five, a gift "from the income of the trust estate;" by clause ten in two places the trustees are instructed to hold shares of Ginn and Company "as a part of the principal of the trust fund;" and in clause fourteen the testator directs that the balance of seven twentieths of the entire rest and residue of the estate "shall continue to be held by my Trustees for the benefit of the World Peace Foundation, the income to be paid over to said Foundation, subject, however, to the same terms and conditions hereinabove set forth with relation to the payment of the income . . . of $800,000 of the principal of said trust fund." It is not likely that these phrases, referring unmistakably to a single trust fund, would have been used if a separation into several funds had been intended.

The words which state the provision for the World Peace Foundation disclose a plain design that it is not to be a segregated fund but a part of the income of a larger fund. The crucial and operative sentence is this: "I now authorize and instruct my Trustees to pay over annually, or oftener if business convenience may permit, to the said World Peace Foundation, the income, as nearly as said Trustees can conveniently reckon it, of Eight Hundred Thousand Dollars ($800,000.00), but not exceeding Forty Thousand Dollars ($40,000.00) per year." These are the words of gift. They do not express the idea of a separate fund, nor fairly permit the inference that that was intended. If a fund was to be

set apart, there would be no meaning for the words "the income, as nearly as said Trustees can conveniently reckon it." Yet it is a rule of common sense as well as of testamentary construction that, where reasonably practicable, forceful meaning and effect shall be given to all the words used. The income of a definite fund is a fixed amount. When its expenses are deducted from its receipts an exact sum is found. No reckoning is needed, and it does not depend upon the convenience of anybody to ascertain the income of a separate fund with absolute accuracy. It requires no estimation to discover it without variation from the precise fact. Yet a likelihood of possible variation is the thought conveyed by the operative words of the gift. Those words aptly express the idea that the source from which the income is to flow is a larger fund than needed to produce this single annual payment, earning by its several investments different rates of interest, where the computation of the part of income rightly to be apportioned to $800,000 as an aliquant part of the principal might require reckoning and might be subject to some variation from minute exactness.

Where the testator desired to create separate funds, that purpose is expressed in apposite words. In clause five of article fifteen he directs the trustees in a certain contingency to withhold a part of two of the annuities, "investing such part so withheld in a separate trust fund." In article two, also, are directions to the trustees to hold the proceeds of the sale of the homestead "in a separate trust" during the life of the widow if it is sold.

The nature of the estate left by the testator, largely invested in the publishing house bearing his name, and the directions which involve a continuance of a considerable part of the fund in the same business, would render difficult any just separation of several funds.

The words of gift to the World Peace Foundation express a double limitation: It is (1) of the income of an amount not exceeding $800,000, and (2) in no event can the annual income exceed $40,000. Both these restrictions can be observed better through a series of years by means of the administration of a larger fund than by the segregation of an amount of securities equalling $800,000 at the beginning but liable to vary materially as time goes on, through almost inevitable changes in the value of investments.

The testator was a college graduate, and presumably a man of great force, acute intelligence and wide experience, whose life work had been in business closely affiliated with education. He had given prolonged study to the plan for the World Peace Foundation, and had discussed it frequently with his intelligent attorney who drafted the will. The will must be construed giving due weight to the natural inference that words expressive of benefaction for that end were chosen with care for the purpose of disclosing plainly a carefully matured scheme to carry out a long cherished design close to the heart of the testator.

The stray references in clauses thirteen and fourteen to the "$800,000," and "the fund of $800,000, or thereabouts, originally set aside" for the cause of peace are not expressive of the testator's main purpose touching that subject and cannot be taken to supply a requirement omitted elsewhere, that either as matter of bookkeeping or of physical segregation, that sum must be actually put apart and treated as a fund distinct from the main fund. At least until the annuities have all or substantially all been paid in full, the foregoing considerations apply; and it seems the manifest purpose of the testator that one great common fund should support all his benefactions under article fifteen except as specified in clause five.

The facts found by the master, assuming that they all are competent and may be considered, do not lead to a different conclusion.

In order to avoid misapprehension it may be added that no instruction is intended to be given as to the manner in which the trustees shall keep their books. That is a matter of administration about which the will contains no direction. The first request for instructions is answered in the negative.

2. The second request is for instruction as to the method by which the amount or rate of income payable to the World Peace Foundation is to be reckoned. The answer to this question, also, depends upon the correct construction of the crucial and operative sentence of gift already quoted from article fifteen, clause eleven. The reasons, which have led to the decision that the residue of the estate given to the trustees is to be treated and administered as a single fund, require the conclusion that the payment to the World Peace Foundation shall be that proportionate part of the total net income of the fund which $800,000 bears to the entire

principal of the fund, but not exceeding $40,000 annually. It is the ordinary rule that a gift of income means the net and not the gross income, in the absence of something showing a contrary intent. *Watts* v. *Howard,* 7 Met. 478, 482. *Stone* v. *Littlefield,* 151 Mass. 485, 488. It would have been simple for the testator to have provided for an annuity of $40,000 if that had been his purpose. He knew how to do that unequivocally for the benefit of members of his family and others to whom he desired to make that kind of gift. It would have been equally simple for him to have given the income of a particular fund or of a fund of a specified amount. He did not make a gift of either kind. But he did direct his trustees, to whom a large general fund is given, to pay over to that beneficiary annually or oftener if permitted by "business convenience . . . the income, as nearly as the said Trustees can conveniently reckon it" of $800,000. These words mean, in their context and in the light of conditions well known to the testator, that the net income of all the investments apportioned equally to the entire principal of the trust property with calculation of the resulting rate is to be taken as the income rate, and that rate computed on $800,000, but in no event to exceed $40,000, shall be paid annually to the World Peace Foundation.

This conclusion is not overcome by the abbreviated reference in clause eleven "to continue the payment of said sum of $40,000.00 to said World Peace Foundation." These words are not used in defining the gift, but are a chance phrase alluding to that which elsewhere was accurately defined. The homestead estate is to be excluded in considering this aspect of the case. The life use of that property and the income of its proceeds in the event of its sale are given to the widow and it has not yet become a part of the trust fund.

3. The third request for instructions is: "Whether in the reckoning of the income payable to the World Peace Foundation under said will, proceeds of the sales of vacant real estate shall be treated as principal of the trust property, or whether the same shall be apportioned between principal and income." The unproductive real estate is small compared with the total amount of the fund. The income meets all the requirements of the annuities and for the future appears likely to provide the maximum annual payment to the World Peace Foundation. Under these circum-

stances and in view of the terms of the gift to the World Peace Foundation it seems to accord more with what may be presumed to have been the intent of the testator to treat the entire proceeds of sales of real estate as principal, thus following *Jordan* v. *Jordan,* 192 Mass. 337, rather than to apportion the proceeds between income and principal according to the rule of *Edwards* v. *Edwards,* 183 Mass. 581, and of the numerous cases there reviewed.

4. The fourth question relates to the payment of premiums on the bonds of trustees. The payment of such expenses is expressly authorized. R. L. c. 150, § 15. These should be paid out of income and not out of principal. The ordinary expenses of administering a productive trust must be borne by the income, and the one here involved falls in the same class as insurance, taxes, interest on mortgage, repairs and other charges incidental to the management of the trust. *Bridge* v. *Bridge,* 146 Mass. 373, 376. *Parker* v. *Ames,* 121 Mass. 220. *Ogden* v. *Allen,* 225 Mass. 595, 597.

5. The next question relates to the payment of local annual taxes and of the inheritance taxes. It has been decided in *Parkhurst* v. *Treasurer & Receiver General, post,* 196, that the World Peace Foundation is a charity and hence not liable to an inheritance tax. That subject, therefore, is eliminated. If the investments of the trust fund are subject to annual taxes, these are to be paid as a part of the expenses of the trust and are to be deducted before the net income can be ascertained. *Holmes* v. *Taber,* 9 Allen, 246. *Plympton* v. *Boston Dispensary,* 106 Mass. 544, 547.

6. The sixth request for instructions is whether there shall be deducted from the several annuities the amount of Massachusetts inheritance taxes and other taxes assessed thereon. So far as concerns the inheritance tax of this Commonwealth the answer is found in St. 1912, c. 678, § 1, as amended by St. 1913, c. 498, which, referring to the inheritance tax, provides that "All taxes under this act shall be paid out of and chargeable to capital and not income, unless otherwise provided in a will . . . or other instrument creating the grant or gift." This modifies the rule established by *Minot* v. *Winthrop,* 162 Mass. 113, 126, that the inheritance tax under the statute then in force was payable out of the annuity. Manifestly there is no other provision in the instant will. As then there is no sequestration of any part of the general

trust fund, but it is held as a unit, these taxes must be paid out of it as the capital fund. It is the only "capital" out of which such taxes can be paid. The other taxes assessed against the annuities are to be borne by and paid out of the annuities upon which they are levied. That is the general rule. *Sohier* v. *Eldredge,* 103 Mass. 345. There is nothing in this will which shows a determination that the annuities shall be paid in full free from all tax. The expression toward the end of article fifteen, clause fifteen, to the effect that if his estate is too small to meet all the benefactions of his will, "then I expressly provide that all the gifts and annuities provided in this Will, down to and including paragraph XV (9), shall be paid in full before any payment shall be made under paragraph XV (11) to the World Peace Foundation," does not mean in its context and under all the circumstances that they are to be paid free of taxes. The contingency upon which those words were to become effective has not arisen. There is nothing in *Brimblecom* v. *Haven,* 12 Cush. 511, at variance with this conclusion.

To prevent misconception it should be added that the trustees cannot request instructions as to payments made by the executors for taxes or otherwise and allowed in their accounts. What has been said pertains only to present and future difficulties confronting the trustees in the performance of their duties.

7. The seventh request relates to deduction from income, capital or otherwise of the amount of taxes upon the interest of the World Peace Foundation under the will in property of the testator situated in the State of Minnesota "paid by the executors, and charged by said executors against capital of the estate, and no part thereof against income." It does not appear that the trustees have paid or been asked to pay this tax. Having been paid by the executors, it was a proper subject for accounting by them. Already the executors have filed at least one account, which has been allowed. The fund out of which these taxes were payable is a matter to be settled on the account of the persons who rightly paid the taxes out of properties in their hands. The trustees have received simply the residue of the estate. Their responsibility begins and ends with the administration of that residue. It is not perceived that on the present record the trustees now have a right to request instructions upon this point. *Hill* v. *Moors,* 224 Mass. 163, and cases cited.

8. The next request for instruction has a double aspect. The

first is whether the annuities are a charge upon both principal and income. That part of the question does not appear to be material in the present state of the trust. But it is apparent from the final sentence of article fifteen that in substance the testator intended that the annuities to his family should be preferred to all other legacies in case of a deficiency, and in case of necessity should be a charge upon both principal and income. The second aspect of this inquiry is whether a fund is to be erected for the support of the annuities. Many of the reasons stated in answering the first inquiry are equally pertinent and decisive as to this. It is the plain purpose of the testator that the entire trust fund treated as a unit is to support the payment of the annuities and that there is to be no division of it for the purpose of establishing separate funds. He thereby avoided a multiplication of the difficulties illustrated by *Welch* v. *Hill,* 218 Mass. 327.

9. The ninth request seeks instruction as to the duty of the trustees respecting the shares of Ginn and Company referred to in article fifteen, clause eight, to be kept available for the two sons of the testator. The framework of that clause in connection with the rest of the article does not disclose a fixed purpose on the part of the testator that these shares should be set apart and held separate and distinct from the rest of the fund. The administration of the trust fund as a single entity will enable the trustees to be in a position at all times during the effective life of this clause to comply with that part of the will if and when the conditions precedent arise which would call it into operation. The provisions of that clause are wholly contingent and there is no occasion for special activity respecting them until these contingencies shall come into existence. The reasons already stated lead to the conclusion that no separation of this part of the fund is required.

10. The tenth request relates also to clause eight for the benefit of the sons and has regard to the income which in a contingency may be payable to one or both of them. No facts are set out which make it a present obligation on the part of the trustees to put apart any income for this purpose. *Hall* v. *Cogswell,* 183 Mass. 521, 523. A broad discretion as to management of the trust is vested in the trustees and with that the court upon this record would not undertake to interfere. See *Leverett* v. *Barnwell,* 214 Mass. 105, 108, and *Cummings* v. *Cummings,* 146 Mass. 501.

11. The petitioners request instructions whether any amount is now payable to the World Peace Foundation from accumulated income in their possession, in order to bring the payments for each of the two years 1914 and 1915 up to $40,000. They already have paid to that institution "the income, as nearly as it could be reckoned" for those two years, "from that part of the total estate represented by the ratio of $800,000 to the whole estate, including all classes of property comprising the same, except the homestead." As already has been pointed out, this is the extent of the gift under the will to the World Peace Foundation in this particular. There is no provision for making up a deficiency in one year out of the excess of another year.

12. The twelfth and thirteenth requests ask for instruction as to the disposition of the undistributed cash principal now in their hands, amounting to about $110,000. The answer depends upon the meaning of article fifteen, clause thirteen, as modified by the codicil. Its material terms are, "If and when (after the payment of the foregoing gifts and legacies and the reserve of sufficient trust funds to provide for outstanding annuities and other gifts of income, absolute and contingent), principal of my estate becomes available for distribution, I authorize and instruct my Trustees to make gifts and to dispose of such principal as follows:" Then ensue gifts of $10,000 each to Tufts College, Westbrook Seminary, and Ingleside Home, and one for $5,000 to Mrs. Plummer in "recognition of what she has for a long time been doing for the Ingleside Home, practically without compensation," and the testator's "belief that it is just and wise" that this sum originally intended for the Home itself "should go to her in recognition of and some sort of compensation for what she has done, is doing, and will probably continue to do for this institution." A further contingent gift of $15,000 is made to the Home, payable within three years after the first. The aggregate of these gifts presently payable is $35,000 and the possible maximum of $50,000 is not a large sum when compared with the entire trust fund. Although nothing more appears respecting Mrs. Plummer than here stated, it is plain that the purpose of the testator was to give to her something to add to her enjoyment of life and not merely to constitute a fund for the benefit of her heirs or legatees. The testator was a graduate of Tufts College. The crucial words of gift so far as con-

cerns time are in effect that these legacies shall be payable only after there is an adequate reserve to support the payment of all annuities and gifts of income. The real question then is whether there is now such reserve. If these legacies all should be paid, the trust fund still would slightly exceed $2,000,000. Of this sum more than $200,000 consists of real estate which doubtless will be sold within a reasonable time and be added to the productive property of the fund. The annual income is more than $100,000 per year. A purchase of annuities out of the trust fund sufficient to meet the requirements of the will would leave in that fund more than the $800,000, whose income to the extent of $40,000 is demanded for the support of the World Peace Foundation. Under these and all the other circumstances appearing on the record, we are of opinion that the time has arrived for the payment of the legacies given by clause thirteen and that they should not longer be withheld.

It is the settled rule that "Interest is payable upon pecuniary legacies from the time when, by the terms of the will or by the rules of law, they become due and ought to be paid." *Kent* v. *Dunham,* 106 Mass. 586, 590. These legacies are not payable at a fixed calendar date either by the will or by the law. They become due only upon the happening of the contingency that principal of the estate becomes available therefor after satisfying all prior legacies absolute and contingent. That event happened according to the present decision upon the facts here disclosed on April 11, 1916. It cannot be said to have occurred earlier than that date. The absolute legacies of $35,000, therefore, bear interest at the rate of four per cent per annum since that date. St. 1915, c. 151, § 2.

13. The instruction to be given in reply to the fourteenth and fifteenth requests depends upon the point whether any part of the final residue of the estate is now payable under article fifteen, clause fourteen. That is a true residuary clause. While it well may be that, if there should be a considerable increase in the annual income of the fund as compared with the charges against it, a time may come for a single or several partial distributions of this residue, it cannot be said that such time has yet arrived. A large part of the fund is bound up in the fortunes of a single business adventure, which apparently has been prosperous for many years. But it is plain, also, that the testator was solicitous that the

support of his family and the World Peace Foundation should be as certain as human foresight could make it, and not subject to any vicissitudes. A good margin of safety should be preserved at all times in the principal of the fund, so that these beneficiaries may receive a constant income. Much must be left to the sound business judgment of the trustees in deciding upon a time when it will be safe to make a partial distribution of the residue and still retain enough to satisfy all the other requirements of the will with a fair margin of safety. It follows that the trustees should retain for the time being as a part of the capital of the fund the balance of the accumulated cash, whether of principal or income.

14. Instruction is requested whether the trustees have power to invest and reinvest the trust fund. It is plain that this power is conferred upon them by implication, although not in express terms. The testator knew and had in mind the fact that his investments could not always continue the same, as appears from several terms of the will. The active duty of securing income sufficient to meet the various obligations as to annuities and otherwise rests upon the trustees. By necessity they are clothed with the power and charged with the duty to invest and keep safely and productively invested the funds of this trust, in such property and securities as are recognized as appropriate for trust funds, or are authorized by the will. *Jones* v. *Atchison, Topeka, & Santa Fe Railroad,* 150 Mass. 304, 308. *Smith* v. *Haynes,* 202 Mass. 531, 535. *Dickinson, appellant,* 152 Mass. 184, 186.

15. The final request is for instruction as to the nature of the gifts to Marguerita Ginn and Edwin Ginn, children of the testator, under article fifteen, clause five. It is not necessary to recite this clause at length, because it is clear from its terms that the gift intended is for the life of each and for no less period. The power conferred upon the trustees to withhold payment ceases when each reaches the age of twenty-eight years. But the annuity continues during life so far as necessary, together with the income due each from the Beacon Trust, to make up an annuity of $4,000 for each.

*Decree accordingly.*