EDWIN A. BAYLEY, executor, vs. PERCY H. SLOPER, executor, & others.

Suffolk.   November 29, 1927. — May 26, 1928.

Present: RUGG, C.J., CROSBY, CARROLL, WAIT, & SANDERSON, JJ.

*Devise and Legacy*, Conversion, Preferential legacy, Interest upon legacy. *Executor and Administrator*.

A will, made in 1911, seven days before the death of the testator, contained pecuniary legacies beyond the value of the estate, real and personal, at the time of the death of the testator, and a clause purporting to dispose of a residue.   A thirteenth paragraph provided that, should the estate "prove insufficient for the payment of my debts and the legacies hereinbefore bequeathed" the executor was to apply the assets to the payment in full of three specified bequests.   A fifteenth clause, after giving broad powers to the executor, provided, "and if in the opinion of my executor it shall be expedient to defer the conversion of my real or personal property into cash beyond the usual period of two years, it is my will that he take a further time, not exceeding five years, as he may deem best for the advantage of my estate."   A sixteenth clause read as follows: "I further direct that the legatees and devisees under this will shall not be entitled to the legacies and devises herein set forth until the conversion of my real and personal estate into cash has been made by my executor, as herein provided, and that all rents, interest, income and proceeds arising from my estate, shall be held at the discretion of my executor until my whole estate has been converted into cash, when said devises and legacies shall be paid as herein provided, without interest thereon."   Two years after the testator's death, for the protection and conservation of the real estate, each of the legatees executed and delivered to the executor an agreement which provided, in substance, that, for the preservation of the estate and to prevent its being sold by foreclosure proceedings or other forced sale, the legatees authorized and requested the executor to apply the income accruing from the estate since the death of the testatrix, and which might thereafter accrue, to the payment in whole or in part of the debts and expenses of or in relation to the real estate.   Not until 1926 was it possible to secure an offer for the sale of the real estate and convert it into cash for an amount sufficient to pay even the preferred legacies in full or to obtain an advantageous price; he then sold it, thus procuring, with accumulated rents, sufficient funds to pay the legacies at their face value, but not with interest.   The residuary devisee claimed the rents.   The executor sought instructions.   *Held*, that

(1) There was nothing in the will to show that the power of the executor to sell was to cease at the expiration of the seven years from the date of the testator's death;

(2) The will showed that the testator intended that all the real estate and personal property, including rents and income thereof, should be held by the executor in order that the estate might be increased by such income and the price realized from the sale of the real estate sufficiently to enable him to pay in full the debts, legacies and charges of administration;

(3) The residuary devisee never became entitled to any rights in the real estate as such, but it was to be held by the executor, who alone was entitled to the rents, which it was his duty to hold as general assets of the estate and, with the proceeds of sale, to pay the debts and charges of administration and turn over the balance to the devisees and legatees as provided in the will;

(4) The "said devises and legacies" referred to in the sixteenth paragraph plainly comprised all the legacies and devises to beneficiaries named in the will;

(5) All the legacies and devises should be paid without interest.

BILL IN EQUITY, filed in the Supreme Judicial Court for the county of Suffolk on February 15, 1927, by the executor of the will of Frances H. Stearns, late of Boston, for instructions in reply to the following questions:

"1. Was the provision of said paragraph 16 of the will that the legacies should be paid 'without interest thereon,' modified or rendered void by the fact that the time of the conversion of the whole estate into cash was substantially delayed beyond the seven-year period referred to in said paragraph 15 of the will, with the assent of all the legatees and without any reservations made by any of them?

"2. Does the provision in said paragraph 13 of the will, creating a preference for the payment in full of the legacies therein specified, in case of an insufficiency in said estate to pay all the legacies in full, mean the payment of any interest in addition to the face amounts of such preferred legacies?

"3. Does the fact that the time of the conversion of the whole estate into cash was delayed beyond said seven-year period, entitle any of the legatees to receive any interest on their legacies; if so whom of such legatees are so entitled, and for what period?"

The will was made April 22, 1911. Paragraphs 13, 15 and 16 of the will were as follows:

"Thirteenth: In the event that my estate shall prove insufficient for the payment of my debts and the legacies

hereinbefore bequeathed then I direct my executor to apply the assets of my estate to the payment in full of the bequests to the said Richard H. Jones in trust, as set forth in the six paragraph of this will; to Mrs. Katharine C. Jones, as set forth in the seventh paragraph of this will, and to Edwin A. Bayley, in trust and personally, as set forth in the ninth and eleventh paragraphs of this will."

"Fifteenth: I hereby give my executor full power and authority to manage, lease, mortgage, sell (either at public auction or by private sale) the whole or any part of my estate, both real and personal, when and in such manner and on such terms as he may deem expedient, either for the purpose of making or changing investments or for making distribution hereunder, without applying to any probate court for license so to do, and to this end, to execute and deliver any and all proper instruments in writing to fully carry into effect the power and authority herein granted, and if in the opinion of my executor it shall be expedient to defer the conversion of my real or personal property into cash beyond the usual period of two years, it is my will that he take a further time, not exceeding five years, as he may deem best for the advantage of my estate.

"Sixteenth: I further direct that the legatees and devisees under this will shall not be entitled to the legacies and devises herein set forth until the conversion of my real and personal estate into cash has been made by my executor, as herein provided, and that all rents, interest, income and proceeds arising from my estate, shall be held at the discretion of my executor until my whole estate has been converted into cash, when said devises and legacies shall be paid as herein provided, without interest thereon."

Other material facts are stated in the opinion. The suit was reserved by *Crosby,* J., for determination by the full court.

*R. Gallagher,* stated the case.

*F. Rackemann,* for Marilla J. MacDill and others.

*L. A. Mayberry,* for Percy Sloper, executor, and others.

*F. E. Raymond,* for Hannah E. Brown and others.

*A. F. Clarke,* for Nellie G. Dickinson.

CROSBY, J.   This is a petition for instructions, filed by the executor of the will of Frances H. Stearns.

The testatrix died April 29, 1911.   Cash legacies under the will amounted to $55,000.   The residue of her estate was devised and bequeathed to Marilla Jones and Cyril Jones in equal shares.   The estate consisted of personal property valued at $3,885.71, and an equity in two parcels of real estate inventoried at $2,900; this real estate was subject to three mortgages, aggregating $45,000, all of which were overdue at the date of her death.   Her unsecured indebtedness at the time of her decease was about $7,000.   The real estate was situated in Magnolia, in Essex County, in this Commonwealth; it consisted of a parcel of land with buildings thereon, and of a vacant lot, and was valuable only for summer occupancy.   When the will was executed the testatrix was of opinion that the real estate was worth approximately $125,000, and knew that the payment of her debts and legacies depended on the conservation of the real estate and the net income arising therefrom, until such time as an advantageous sale of the property could be made.   Accordingly, she made provision therefor in paragraphs fifteen, sixteen and seventeen of her will, which will be referred to hereafter.

On April 18, 1913, for the protection and conservation of the real estate, each of the legatees executed and delivered to the executor an agreement which provided, in substance, that, for the preservation of the estate and to prevent its being sold by foreclosure proceedings or other forced sale, the legatees authorized and requested the executor to apply the income accruing from the estate since the death of the testatrix, and which might thereafter accrue, to the payment in whole or in part of the debts and expenses of or in relation to the real estate.

It is recited in the findings of fact that, in the opinion of the executor, it was expedient to defer conversion of the real or personal property of the estate into cash until 1926; that it was impossible, because of the condition of the real estate market, for the executor at any time between the date of his appointment and 1926 to secure an offer for the real

estate and convert it into cash for an amount sufficient to pay even the preferred legacies in full or to obtain an advantageous price. "This situation was explained from time to time to each of the legatees by the executor, and the delay or postponement of the conversion of said real estate into cash until December 1, 1926, was consented to by each of said legatees." On that date it was sold, and for the first time since his appointment the executor had in his hands sufficient funds to pay the legacies. He had never before had sufficient funds in his hands to pay the face amount of the preferred legacies; and before August, 1926, when the offer which finally resulted in a sale was made, no legatee had demanded that the real estate be converted into cash or that the legacies be paid. It is further found that before the receipt of the offer for the real estate in 1926, no claim for interest on the legacies had been made by any of the legatees, nor had the residuary legatees made claim that they were entitled to the income accumulated subsequently to May 18, 1918, when the seven-year period elapsed after the allowance of the will.

In pursuance of the discretion granted to him, and with the consent of all the legatees, the executor after the last named date continued to manage and conserve the estate until an advantageous sale could be made. The rents, interest and income arising therefrom, held by him on May 18, 1926, amounted to about $26,000, and represented accumulations since his appointment on May 18, 1911, less certain amounts expended with the consent and agreement of all the legatees for the payment of the debts of the estate, which have been paid in full. On December 1, 1926, the executor received from the sale of the real estate $34,666.44, the sale having been made subject to existing encumbrances. In addition, he held five shares of stock inventoried at $458.75. No other assets except the income as above stated have ever come into his possession. The price received for the real estate included the furnishings of the house, inventoried at about $800. Since December 1, 1926, the executor has had in his possession, subject to the charges of administration, a sum sufficient to pay all the legacies at their face value, but not with interest. On the date this petition for in-

structions was filed he had about $61,500, all of which, except the net amount received from the real estate and the shares of stock, represented accumulated rents and income.

The residuary legatees and devisees, Cyril H. Jones and his sister Marilla Jones MacDill, contend that under the twelfth paragraph of the will, the accumulated rents are not assets for the payment of money legacies, but that such rents belong to them.

We will first consider the claim for rents. The rule for the construction of wills is to determine the intent of the testator from the whole instrument. "It is permissible also to look at all the material circumstances in the light of which the will was executed in order to comprehend the sense and purpose of the language employed." *Ware* v. *Minot,* 202 Mass. 512, 516.

The testatrix under paragraph fifteen of her will gave her executor authority to sell the real estate provided that "if in the opinion of my executor it shall be expedient to defer the conversion of my real or personal property into cash beyond the usual period of two years, it is my will that he take a further time, not exceeding five years, as he may deem best for the advantage of my estate." It is manifest she intended that, when an advantageous sale of the real estate could be made, it should be sold and converted into cash, and that the legacies should then be paid out of the proceeds of such sale. This provision was directory and not mandatory. Accordingly, if, during the seven-year period, the executor was unable to make an advantageous sale of the real estate, he could defer such sale until 1926, as it appears that such a sale could not have been made before that time. It was further provided, in the sixteenth paragraph, that the legatees and devisees "shall not be entitled to the legacies and devises herein set forth until the conversion of my real and personal estate into cash has been made by my executor, as herein provided, and that all rents, interest, income and proceeds arising from my estate, shall be held at the discretion of my executor until my whole estate has been converted into cash, when said devises and

legacies shall be paid as herein provided, without interest thereon."

There is nothing in the will to show that the power of the executor to sell was to cease at the expiration of the seven years from the date of the testatrix's death. *Hale* v. *Hale*, 137 Mass. 168. *Chasmar* v. *Bucken*, 10 Stew. (N. J.) 415, 419. *Marsh* v. *Love*, 15 Stew. (N. J.) 112. *Molten* v. *Sutphin*, 21 Dick. 20. *Hoskinson's Estate*, 268 Penn. St. 447. *National Bank of Commerce* v. *Smith*, 17 R. I. 244. *Kennedy* v. *Mangan*, 278 Fed. Rep. 1009, 1012. *Pearce* v. *Gardner*, 10 Hare, 287. *Cuff* v. *Hall*, 1 Jur. (N. S.) 972. The intention of the testatrix shows that all of her real estate and personal property, including rents and income thereof, should be held by the executor in order that the estate might be increased by such income and the price realized from the sale of the real estate, which would be sufficient to pay in full the debts, legacies and charges of administration. The fifteenth and sixteenth paragraphs show that none of the legatees or devisees is entitled to receive a legacy or devise until the entire estate was converted into cash, and when so converted it became personal property. The residuary legatees never became entitled to any rights in the real estate as such, but the same was to be held by the executor who alone was entitled to the rents received therefrom which it was his duty to hold as general assets of the estate and, with the proceeds of sale, to pay the debts and charges of administration and turn over the balance to the devisees and legatees as provided in the will.

It is plain that it was the intention of the testatrix to convert the estate into cash. It was said in *Hammond* v. *Putnam*, 110 Mass. 232, at page 236, "But the general principle is applied in all the cases, that wherever the intention of the testator is clear to convert real into personal estate, the law will regard it as converted to that extent at the death of the testator, and he who takes under the will takes it with the character which the will has impressed upon it. . . . But we think it is clear beyond a reasonable doubt that, for the purposes of distribution among his legatees, his intention was to convert his estate into personal property, and to impress

upon it the character of personalty." *Baker* v. *Commissioner of Corporations & Taxation,* 253 Mass. 130, 133, 134, and cases there collected. It follows that the contention of the residuary legatees, that they are entitled to the rents received from the real estate, cannot be sustained. The facts in *Brooks* v. *Jackson,* 125 Mass. 307, and other cases cited by the residuary legatees, are distinguishable from those in the case at bar.

It is the contention of the residuary legatees that, if they are not entitled to receive the rents, all the legacies which are entitled to priority payment under the thirteenth paragraph must be paid in full with interest thereon before any payment can be made to legatees not so preferred. It is also the contention of Helen Dickinson, one of the legatees, that under the ninth paragraph of the will the first instalment of income became payable to her on November 18, 1918, which was six months after the expiration of the seven-year period, and that she is entitled to such payment of income semiannually thereafter; that as these payments have not been made, she is entitled to interest thereon from the time each instalment became due and payable.

The fifteenth paragraph of the will gave to the executor discretionary power respecting the time when, in his opinion, the entire estate should be sold and converted into cash by advantageous sale. It is found that such a sale of the real estate could not have been made before December 1, 1926, and it is apparent that all of the legatees, by consenting to the deferring of the sale until it was actually made, believed it to be for their interest. It was provided in the sixteenth paragraph that all rents, income and proceeds of the estate should be held at the discretion of the executor until the whole estate had been converted into cash, when "said devises and legacies shall be paid as herein provided, without interest thereon." The "said devises and legacies" referred to in this paragraph, plainly comprised all the legacies and devises to beneficiaries named in the will. No distinction is made between those who have priority and those who were not preferred. The preference mentioned in the thirteenth paragraph does not apply to interest but only to principal.

It seems plain that all the legacies and devises should be paid without interest, and that the testatrix intended paragraph sixteen to apply to all of them, especially as there is nothing in the will to manifest a contrary intent. In view of the fact that they were not to be paid until the entire estate had been converted into cash, it is at least doubtful if any legatee would be entitled to interest, even if the provision that such payments were to be made without interest had been omitted. Besides, as all the devisees and legatees authorized and consented to the conversion being deferred, and as the sale of the real estate was consummated as soon as it was possible to do so at an advantageous price, they cannot insist that they be paid interest from and after the expiration of the seven-year period. *Gunning's Estate*, 234 Penn. St. 148. *Hoskinson's Estate, supra. Brandt's Estate*, 279 Penn. St. 130. It was said in *Kent v. Dunham*, 106 Mass. 586, 590, that "Interest is payable upon pecuniary legacies from the time when, by the terms of the will or by the rules of law, they become due and ought to be paid." It follows that the legacies were not payable until an advantageous sale of the real estate could be made. "These legacies are not payable at a fixed calendar date either by the will or by the law." *Parkhurst v. Ginn*, 228 Mass. 159, 174. G. L. c. 197, § 20, is not applicable to the legacies in the present case.

In view of all the circumstances, including the nature of the property, the amount of the testatrix's indebtedness, and the legacies given in the will, it is apparent that she intended the legacies should be paid out of the proceeds of her real estate and that they should not be due and payable until her property had been converted into cash. It is not disputed, and was found, that such conversion by the executor was made at the earliest period possible. Therefore, until such conversion, the legacies were not payable and interest upon none of them could properly be allowed. *Parkhurst v. Ginn, supra. Gunning's Estate, supra. Estate of Boyce*, 173 Wis. 575, 577. *Lord v. Lord*, L. R. 2 Ch. 782, 789.

Although under paragraph thirteen certain legacies are given preference in payment in the event that the estate

should prove insufficient to pay the debts and legacies in full, that preference does not entitle such legatees to receive interest on their legacies. To allow interest upon any legacy would defeat the clear intention of the testatrix as expressed in her will.

The result is that as to the first, second and third prayers of the bill for instructions the answers are in the negative.

*Decree accordingly.*