*J. Lowell & E. M. Johnson*, for the plaintiff.

---

GEORGE W. CUMMINGS, executor, *vs.* CHARLES H. CUMMINGS & others.

Suffolk.   February 2, 1888. — April 6, 1888.

Present: MORTON, C. J., DEVENS, C. ALLEN, HOLMES, & KNOWLTON, JJ.

*Will — Bequest — Blood Relations — Per Stirpes or Per Capita — Capital and Income.*

If a testator gives the income of a residuary fund to his wife during her life, and directs that the principal at her death be divided "equally between my blood relations of the degree which the law permits," the bequest over is to those who are the heirs of the testator at the time of his death, each of several classes taking *per stirpes* and not *per capita.*

A gift by a testator, the net income of whose estate amounts to six thousand dollars, to his wife of "twelve hundred dollars in money, to be paid to her annually in quarterly payments during her life," is payable out of income, and not out of principal.

BILL IN EQUITY, filed April 8, 1887, by the surviving executor of the will of George Cummings, to obtain the instructions of the court as to the payment of the annuity mentioned in the second clause, and the distribution of the residue provided for in the sixteenth clause.   The will, omitting the parts merely formal, was as follows :

1.  "Imprimis.   My will is that all my just debts and funeral charges, and the legacies hereinafter given shall by my executors hereinafter named be paid out of my estate, as soon after my decease as shall by them be found convenient.

2.  "Item.   I give, devise and bequeath to my beloved wife Abigail Cummings my dwelling-house, land and barn in said

Medfield with all my household furniture, my horses, carriages and harnesses, and my library with all the books and pictures therein. Also, twelve hundred dollars, in money, to be paid to her, annually, in quarterly payments, during her life, by my executors hereinafter named ; also, the lot in Mount Auburn Cemetery, which is owned by me together with my brother Daniel Cummings of Boston, Mass. And my will is, that after the decease of my wife my household furniture shall be divided, equally, between her surviving sisters, and that my dwelling-house and my horses, carriages and their harnesses be given to William Chenery and his wife, of said Medfield.

3. "Item. I give to my brother Daniel Cummings of Boston, Mass., five thousand dollars, and to his sons, Charles H. and George W. Cummings, one thousand dollars each.

4. "Item. I give to my executors, in trust, five thousand dollars, of which the income shall be by them paid annually to my sister Mrs. Stephen Smith of Derry, New Hampshire, during her life ; the principal thereof to be equally divided, at her decease, between her surviving children. I also give one thousand dollars to each of said children.

5. "Item. I give and bequeath to my sister Mrs. Maria S. Keyes of Lancaster, Mass., the farm on which she now lives, with all the appurtenances thereof during her life. Also I give to her five thousand dollars, of which the income only shall be paid to her, annually, during her life. And it is my will that, at her decease, the principal of the said sum, and the said farm and its appurtenances shall be divided, equally, between her daughters, Hattie A. and Maria A. Keyes. I also give to my executors, in trust, one thousand dollars, of which the income only shall be paid to Sarah Keyes during her life ; and at her decease the principal thereof shall be divided, equally, between Hattie A. and Maria A. Keyes. I also give to said Hattie A. and Maria A. and to Charles Keyes one thousand dollars each.

6. "Item. I give to my sister Mrs. Maria S. Keyes of Lancaster, Mass., in trust, one thousand dollars, towards the support of her two grandchildren, the children of her eldest son, W. S. Keyes.

7. "Item. I give to the children, if they be living at my decease, of my late sister Julia Irene Albee of Lancaster, Mass., one thousand dollars each. I also give and bequeath to John

Albee of said Lancaster, husband of my late sister aforesaid, the use and improvement of the farm on which he now lives, during his life. And it is my will that, at his decease, the said farm be divided equally between his surviving children.

8. "Item. I give to my two nieces, Mrs. Ephraim Avery and Mrs. Emeline Gowing of Lancaster, Mass., one thousand dollars each. And also to the surviving children of my late sister Lydia Thorn one thousand dollars each. I also give and bequeath to Callie Thorn of Clinton, Mass., the house in which she now lives.

9. "Item. I give to Abby Ann and Frederica Lewis, the daughters of Henry P. Lewis, late of Cambridge, Mass., one thousand dollars each. Also to Tabitha R. Simpson of Boston Highlands, Mass., and to Charlotte C. Simpson of Malden Centre, Mass., the use and improvement of the houses and lands which they now occupy, during their lives. And my will is, that, at their decease, the said houses and lands be divided, equally, between their surviving daughters.

10. "Item. I give to the First Baptist Church and Society in Medfield, Mass., four thousand dollars, to be safely invested and only the income thereof to be annually expended towards defraying the expenses of said church and society.

11. "Item. I give to the Union Church in Westford, Mass., my native town, one thousand dollars, in token of my respect for my dear mother, who was a member of that church.

12. "Item. I give to the public library in Medfield, Mass , one thousand dollars, of which the income only shall be expended annually, for the purchase of books to replenish or increase said library. I also give to said library, after the decease of my wife, my portrait, to be placed in a prominent position therein.

13. "Item. I give to the Society in Mass. for the aid of destitute widows of Baptist ministers, one thousand dollars ; to the Society for the aid of poor Baptist ministers one thousand dollars ; and to the Convention for the support of poor Baptist Churches one thousand dollars.

14. "Item. I direct my executors to cause a suitable monument to be erected in my lot in Mount Auburn Cemetery, at an expense not exceeding one thousand dollars, and to deposit with the trustees of said cemetery corporation a sum not exceeding

five hundred dollars, — the income only of which sum shall be expended for perpetually keeping the lot in such order as they shall approve or require.

15. " Item. It is my will that my wife shall relinquish her right of dower to all the real estate, which I have herein devised and bequeathed to her and my relatives.

16. " Item. I direct my executors, hereinafter named, to keep safely invested all the rest and residue of my estate after payment of the several legacies herein bequeathed, and of my just debts and funeral charges, and to pay the income thereof to my dear wife during her life, and at her decease to divide the principal thereof equally between my blood relations of the degree which the law permits."

Hearing before *Holmes*, J., who reported the case for the consideration of the full court, in substance as follows. The following facts were admitted. The testator, a business man of large intelligence and ability, died on July 7, 1881. The will, dated February 28, 1880, was drawn up by a clergyman without the assistance or advice of persons learned in the law, and was duly admitted to probate on September 7, 1881. The testator's widow, Abigail Cummings, died on March 10, 1887, leaving a will, which was duly admitted to probate. The widow and her executors had received all the net income of the testator's estate that accrued during her widowhood, and such income amounted to about six thousand dollars per year. No claim for any further payment was ever made by her or on her behalf until after her death, and no part of the principal was ever paid to her, and the provision for her in the second item of the will was sufficient for her comfortable support.

The testator had six brothers and sisters : Daniel Cummings, Angelina Smith, Maria Keyes, Charles Cummings, Julia I. Albee, and Lydia Thorn. The first-named three survived him, and the last-named three died before him, leaving issue surviving him; but all of them died before March 10, 1887, when the testator's widow died.

The heirs of the testator at the date of the will, February 28, 1880, and that of his death, July 7, 1881, according to the statute rules of the descent of real estate, consisted of seventeen persons, made up of the surviving brother and sisters of the testator, and

of the children of the deceased brother and sisters. The persons who would have been the heirs of the testator if he had died on March 10, 1887, the date of the widow's death, according to the same rules, were thirty-three in number, consisting of the children of Daniel Cummings, Maria Keyes, Charles Cummings, and Lydia Thorn, and the surviving children and the children of deceased children of Angelina Smith and Julia I. Albee. All the survivors of these, the representatives or heirs of those deceased, the executor of the will of Wright S. Keyes, the husband of Maria Keyes, who, surviving her, died on March 21, 1883, and the executors of the testator's widow, were made defendants.

The children of Daniel Cummings and Charles Cummings, and the executor of the will of Wright S. Keyes, contended that the residuary estate of the testator, George Cummings, vested at the time of his death; and that it then vested (subject to deductions to be made therefrom in the administration of his will and estate) in equal sixth parts, *per stirpes*, according to the number of his brothers and sisters, one sixth part in each of the two sisters and brother then surviving, and one sixth part in the issue then living of each of the two sisters and brother deceased; and that the estate now in the hands of the plaintiff, subject to distribution, should be divided in accordance with such vested interests; and in the case of the death since the death of the testator of any such persons seised of such vested interests, the share of the estate now payable on account of such interests should be paid to the executors or administrators of such person dying seised of said interest.

The children of Lydia Thorn contended that the residuary estate of the testator vested at his death; but that it vested equally among the seventeen persons who were his then next of kin, and should now be distributed equally among them *per capita*, as of the time of his death.

The issue of Maria Keyes, Angelina Smith, and Julia I. Albee, contended that the residuary estate of the testator did not vest until the death of the widow of the testator, on March 10, 1887, and that it then vested equally in the nephews and nieces of the testator then surviving, the issue of any deceased nephew or niece taking the parent's share. According to this

contention the estate would be divided into twenty-six equal parts, one part for each of twenty-three nephews and nieces living on March 10, 1887, and one part for the issue of a deceased nephew and two deceased nieces.

The executors of the will of the widow of the testator contended that twelve hundred dollars annually, in quarterly payments, should have been paid to her out of the principal of the estate independently of the income, and that there is now due to her estate the sum that these payments would have amounted to if paid, but without interest, because the widow had received the interest of the whole estate.

*E. Tappan*, for the plaintiff, read the papers in the case.

*J. B. Warner*, for the executors of the widow.

*T. P. Proctor*, for the children of Daniel Cummings and Charles Cummings, and the executor of Wright S. Keyes.

*E. H. Bennett*, (*G. R. Wheelock* with him,) for certain issue of Maria Keyes and Angelina Smith.

*P. E. Tucker*, for the children of Lydia Thorn.

*H. C. Hartwell*, for the children and grandchildren of Julia I. Albee.

*A. F. Butterworth*, for a child of Maria Keyes.

KNOWLTON,. J. This case presents three questions: First, Is the estate of the residuary legatees to be deemed to have vested in those who were the testator's heirs at the time of his death, or is it to be distributed among those who were his blood relations at the time of the death of his widow? Secondly, Do these legatees take *per stirpes* or *per capita?* Thirdly, Was the annual payment of twelve hundred dollars to the testator's widow, under the second clause of the will, to be made from the income of the estate in the hands of the executors, or from the principal?

It seems very clear that the gift of the residuum was to those who were the testator's blood relations at the time of his death; in accordance with the principle recognized in many cases, that when a bequest is made to one or more for life, and remainder to the testator's heirs, the bequest is to those who are heirs at the time of his decease, unless there are words indicating a clear intention that it shall go to those who may be in that relation at the time of the happening of the contingency upon

which the estate is to be distributed. *Blanchard* v. *Blanchard*, 1 Allen, 223. *Fay* v. *Sylvester*, 2 Gray, 171. *Pike* v. *Stephenson*, 99 Mass. 188. *Gibbens* v. *Gibbens*, 140 Mass. 102, 105.

The term "blood relations" in the sixteenth clause of the will is equivalent in this case to heirs, and the words "equally between my blood relations of the degree which the law permits" seem to have been used to denote the mode of distribution provided by the statute. The will was not drawn by a lawyer, and the language was not accurately used, but it clearly indicates that the testator had in mind the relative rights of heirs differing in relationship to a deceased person, under the law. The word "equally" in this connection is not inconsistent with this view. The testator probably meant by it, with equal regard to the rights of every one as defined by law. Viewing the whole expression most favorably to those who seek a distribution *per capita*, it was merely equivalent to "equally among my heirs," and where that is the language the division is according to the Statute of Distributions. "A devise to heirs designates, not only the persons who are to take, but also the manner and proportions in which they take." *Rand* v. *Sanger*, 115 Mass. 124. See also *Balcom* v. *Haynes*, 14 Allen, 204; *Holbrook* v. *Harrington*, 16 Gray, 102; *Hall* v. *Hall*, 140 Mass. 267; *Booth* v. *Vicars*, 1 Collyer, 6; *Fielden* v. *Ashworth*, L. R. 20 Eq. 410; *In re Campbell's Trusts*, 33 Ch. D. 98.

There is much in the situation of the testator in reference to the number of his heirs of different classes, and the effect which the opposite construction would have upon the distribution of his estate, and in the manifestation of his intention towards different heirs in other parts of his will, to strengthen this view. We are therefore of opinion that the distribution among the legatees under this clause should be made *per stirpes*, and not *per capita*.

By the second clause of the will the executors were required to pay to the testator's widow twelve hundred dollars annually, in quarterly payments, during her life; and by the sixteenth clause, to keep the residue invested, and pay her the income thereof for the same period. The legacy of twelve hundred dollars annually was an annuity, and the testator contemplated the retention in the hands of the executors of the means of

paying it. *Swett* v. *Boston*, 18 Pick. 123. *Stephens* v. *Milnor*, 9 C. E. Green, 358. The annual income of the entire fund in their hands under the will was about six thousand dollars, and the question is whether the annuity was payable from the income or the principal. The very nature of an annuity suggests, when those charged with the payment of it have in their hands a fund producing income sufficient to pay it, that the payment should be made from the income, and not from the principal. In this case the payments were to be made quarterly, and the income regularly accruing would naturally be expected to be used for them, rather than sums deducted from the fund. It has been expressly held, that, where a testator gives an annuity without stating from what source it is to be paid, and then divides the rest of his estate among several persons, it is the duty of the executors before distributing the capital, either to appropriate a sufficient amount of the capital to purchase an annuity, or to reserve enough of it to yield an income amply sufficient to meet the annuity, leaving such portion of the capital to be the subject of another distribution when the annuity has ceased. *Treadwell* v. *Cordis*, 5 Gray, 341. See also *Wroughton* v. *Colquhoun*, 1 DeG. & Sm. 36 ; *Richardson* v. *Hall*, 124 Mass. 228.

That rule applied to the present case would have left the widow, under the sixteenth clause of the will, only that portion of the entire income which remained after deducting sufficient to pay her annuity of twelve hundred dollars under the second clause. Her executors, therefore, are not entitled to the amount which they now claim.

*Decree accordingly.*