RONALD DE REUTER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

HENRIETTA D'ARAMON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

SYBIL WHITEHOUSE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 6243, 10644, 13220.    Promulgated July 8, 1927.

> Where the testator bequeathed to petitioner an annuity and where his will contained no direction to pay the annuity out of the income of his estate, *held*, that the moneys received by petitioner as payments of his annuity is exempt from income tax, under the provisions of section 213(b)(3) of the Revenue Act of 1921.

*Frederick R. Coudert, Esq., Thomas Kelly, Esq., Blount Ralls, Esq., Robert W. Candler, Esq.,* and *S. D. Bowers, Esq.,* for the petitioners.

*Thomas P. Dudley, Jr., Esq.,* for the respondent.

The above proceedings were, by agreement, consolidated and heard together and involve deficiencies in income tax in the case of Ronald De Reuter, for the calendar year 1923 in the sum of $1,470; in the case of Henrietta D'Aramon, for the calendar year 1923 in the sum of $630; and in the case of Sybil Whitehouse, for the calendar year 1921 in the sum of $920.79. These deficiencies arise by reason of the fact that the Commissioner included in gross income for each petitioner, a certain annuity bequeathed to petitioner by the will of James Gordon Bennett. Petitioner Sybil Whitehouse further contends that the Commissioner erred in not permitting the deduction of certain death taxes paid by the estate of James Gordon Bennett to the States of New York, New Jersey, and Rhode Island. In a brief filed in behalf of said petitioner, this last contention has been withdrawn.

#### FINDINGS OF FACT.

The petitioner, Ronald De Reuter, is a nonresident alien, a citizen of France, and resides at 37 Avenue d'Iena, Paris, France. Petitioner Henrietta D'Aramon is a nonresident alien, a citizen of France, resident at No. 1 Boulevard La Tour, Maubourg, Paris, France. Petitioner Sybil Whitehouse is a resident of the City of Newport, R. I., and her principal place of business is at Stone Villa, Newport, R. I.

James Gordon Bennett, a citizen of the United States and a resident of the State of New York, died in the Republic of France, May

24, 1918, leaving a last will and testament, the material portions of which are:

THIRD: I give and bequeath to my wife MAUD an annuity of Fifty thousand dollars to be paid to her in equal quarterly payments in each year during her life reckoning the years from the time of my death and I hereby declare that this provision is made to her in lieu of her dower and right of dower in all my real estate situated in the State of New York or elsewhere in the United States of America.

FOURTH: I give and bequeath unto my sister JEANNETTE BELL the sum of Fifty thousand dollars and make no further provision for her because she is already amply provided for.

FIFTH: I give and bequeath unto my nephew ISAAC BELL an annuity of Thirty thousand dollars, to be paid to him in equal semiannual payments in each year during his life, reckoning the years from the time of my death.

SIXTH: I give and bequeath to my niece NORAH, wife of Major Ricardo, late of the British Army, an annuity of Ten Thousand dollars, to be paid to her personally and upon her individual receipt, in equal semiannual payments in each year during her life, reckoning the years from the time of my death.

SEVENTH: I give and bequeath to my niece HENRIETTA, wife of Count Paul D'Aramon, an annuity of Ten Thousand dollars, to be paid to her personally, and upon her individual receipt, in equal semiannual payments, in each year during her life, reckoning the years from the time of my death.

EIGHTH: I give and bequeath to my step-son RONALD DE REUTER an annuity of Twenty Thousand dollars to be paid to him in equal semiannual payments in each year during his life, reckoning the years from the time of my death.

NINTH: I give and devise absolutely and in fee simple, to SYBIL DOUGLAS, wife of William Whitehouse, my Cottage or stone Villa, consisting of a parcel of land and buildings thereon, situated at Newport, in the State of Rhode Island, known as " Stone Villa " to have and to hold the same to her, her heirs, and assigns forever; and if during my life I shall sell the said Cottage, then and in such case I give and bequeath unto the said SYBIL DOUGLAS, wife of William Whitehouse a sum equal to the amount for which I shall have sold the said Cottage.

TENTH: I also give and bequeath to the said SYBIL DOUGLAS wife of William Whitehouse, an annuity of Five thousand dollars.

By the eleventh to twenty-fifth clauses, inclusive, the testator bequeaths annuities ranging from $500 to $5,000 to various persons. Then follows:

All the above annuities mentioned in paragraphs ten to twenty-five of this my Will shall be paid in equal semiannual payments reckoning from the time of my death.

TWENTY-SIXTH: I give and bequeath unto each and every one of my domestic servants who shall be in my employ at the time of my death, and to whom I do not give an annuity, a sum equal in amount to the amount of his or her wages for one year at the time of my death.

TWENTY-NINTH: It is my long-cherished intention and purpose and it is my will to establish a substantial, appropriate and permanent memorial to my father, the late JAMES GORDON BENNETT, the founder and for many years the proprietor of the " New York Herald," and therefore to that end and to effectuate my said intention and purpose, I direct the Executors of this my Will hereinafter named and such of them as shall qualify and the survivors

and survivor of them and their successors and successor, as soon as practicable after my death and during the lives of ISAAC BELL and JAMES GORDON DOUGLAS and the life of the longest liver of them, to cause or procure to be incorporated a corporation to be named "THE JAMES GORDON BENNETT MEMORIAL HOME FOR NEW YORK JOURNALISTS" in memory of my father and for whom the same shall be a perpetual memorial, the general objects and purposes of which corporation, which shall, if possible, have perpetual existence, shall be to provide and maintain a suitable and comfortable home or to provide pecuniary aid for persons who shall have been employed for at least ten years upon or by or in connection with any daily newspaper or journal which is now or shall be hereafter regularly published in the Borough of Manhattan in the City of New York, and who shall by reason of old age, accident or bodily infirmity, and through lack of means be unable to care for themselves or need such home or aid, each of which persons shall be nominated and recommended for the benefits of such home or for such aid by the proprietor or owner or publisher of any such newspaper or journal (whether an individual or a corporation) and shall be approved and accepted by the Board of Directors of such home in its uncontrolled discretion, and which Board of Directors shall always in the selection, approval and acceptance of persons to receive the benefits of such home or such aid, give the preference to any person who shall be or shall have been employed by or associated with the New York Herald Company or The New York Herald Company Société Anonyme Francaise upon or in connection with either the New York or the European Edition of the New York Herald newspaper or the Evening Telegram Newspaper. The said Memorial Home Corporation shall establish and maintain a suitable building or suitable buildings and grounds and appurtenances to provide a home or homes for the persons so to be benefited or aided and may also aid any such person or persons by pecuniary or other contributions or by pensions or otherwise as its Board of Directors may, in its uncontrolled discretion, from time to time deem best. And I give, devise and bequeath all the rest, residue and remainder of all the estate and property real and personal and of every kind and nature and wheresoever situated which shall belong to me or be subject to my disposal at the time of my death, unto such THE JAMES GORDON BENNETT MEMORIAL HOME FOR NEW YORK JOURNALISTS CORPORATION so to be formed, when and as soon as the same shall be duly incorporated, to be used and applied for its corporate purposes; and all income of my said residuary estate and property which shall accrue after my death and until such Home Corporation shall be so duly incorporated and entitled to receive such residuary estate and property, I give and bequeath absolutely unto my friends EUGENE HIGGINS and RODMAN WANAMAKER and JAMES STILLMAN and to such of them as shall survive me. It is my desire and will that such Memorial Home Corporation shall own and as soon as the due administration of my estate shall permit, receive and that it shall hold as long as practicable all capital stock of The New York Herald Company and the New York Herald Company Société-Anonyme Francaise which shall belong to me at my death and form part of my residuary estate and property, and that by virtue of its ownership of such stock, it shall from time to time elect such persons as directors of said The New York Herald Company and said The New York Herald Company Société Anonyme Francaise as shall continue to manage each of said companies and conduct the business and publication and management of The New York Herald newspaper in both its New York and European editions and The Evening Telegram upon the same principles and traditions and with the same policy and in the same manner so far as practicable, as the same shall be conducted at the time of my death.

It is also my wish and hope and I request that the directors of said New York Herald Corporations shall so manage the business and affairs thereof as to accomplish such desire and to that end that they establish and set aside so much of the earnings and profits of said Corporations or either of them as shall provide reserve or surplus funds sufficient in their judgment to provide for all possible contingencies of the business and to maintain the high standard, efficiency, independence, and wide influence of the newspapers published by said Corporation, and if deemed desirable to that end, to reduce the selling price of any of said newspapers or the charges for advertisements therein or to increase the costs of production by improvements in any of said newspapers, always having in view these objects rather than an increase of net profits. It is also my wish and hope that each of the Executors of this my Will hereafter named and each persons who may at any time be an Executor of my Will, shall be and act as a director of such Memorial Home Corporation and a director of each of said corporations The New York Herald Company and The New York Herald Company Société Anonyme Francaise. It is also my will and I direct that each Executor of this my Will who shall act as a director of such Memorial Home Corporation shall be paid and receive as compensation for his services as such director and his services as a director of either or both of said New York Herald Corporations, if he shall also be a director of them or either of them, the sum of Five thousand dollars per annum in addition to any commissions or compensations which he may receive or be entitled to for his services as an Executor of this Will.

THIRTIETH : I hereby nominate and appoint my friends EUGENE HIGGINS, RODMAN WANAMAKER and JAMES STILLMAN to be the Executors of this my Will, and I request and direct that no bond or security for the performance of his duties be required of any of them or of any other Executor of this my Will and that each such Executor may be permitted to act as such Executor without giving any bond or other security. For the purpose of paying any legacy or legacies, or satisfying or providing for the payment of any of my debts or obligations or of any annuity or annuities, or for the execution of this my Will or for the administration of my estate or for any other purpose, I authorize and empower the Executors or Executor for the time being of this my Will, in their or his uncontrolled discretion, to sell, assign, convey, transfer, mortgage, lease or exchange any real or personal property which may belong to me at my death or which may at any time belong to or form part of my estate and property, and to execute and deliver any and all deeds, conveyances, assignments, mortgages, leases and other instruments which may be necessary or proper to carry any such sale, assignment, mortgage, lease, exchange or other disposition into effect, and any and all property so sold, conveyed, assigned, mortgaged, leased or exchanged shall be free from all lien or charge of or by reason of any devise, bequest, or annuity given or made by this my Will or any Codicil thereto. I authorize and empower said Executors or Executor to retain and hold any personal property which may belong to me at the time of my death and to set aside and hold any part thereof to provide for the payment and satisfaction of any annuity given by me. I especially request and charge said Executors and Executor not to sell or part with any of the capital stock of The New York Herald Company or The New York Herald Company Société Anonyme Francaise unless it shall be absolutely necessary to do so, but to transfer all of such capital stock to said Memorial Home Corporation as part of my residuary estate when and as soon as practicable to do so in due course of the administration of my estate and the execution of this my Will.

All the annuities involved in these proceedings, to wit, those paid the petitioners Ronald De Reuter and Henrietta D'Aramon in the year 1923, and to Sybil Whitehouse in the year 1921, were paid by executors of the will of James Gordon Bennett out of the income of the estate. In November, 1921, the executors of the will of James Gordon Bennett filed in the Surrogate's Court for the County of New York, State of New York, an intermediate account of settlement which was thereafter approved by said court. That account showed that all of the annuities herein involved were, prior to November 14, 1920, paid out of the corpus of the estate and all such annuities were, on and after November 14, 1920, paid out of the income of the estate. The total amount of the annuities payable in 1920 was $144,000. The account of settlement shows that the executors, on December 30, 1920, permanently set aside to the James Gordon Bennett Memorial Home for New York Journalists Corporation, which was organized under the laws of New York in May, 1919, the residuary devisee and legatee under said will, but subject to taxes, annuities and other charges, the following assets:

| | |
|---|---|
| Promissory notes of Frank A. Munsey Co | $2,000,000.00 |
| Bonds and mortgages on Fort Washington property, balance of principal due thereon | 1,097,990.00 |
| Bond and mortgage of Norman Countryman, balance of principal due thereon | 450.00 |
| $34,900 U. S. Victory Loan bonds, amount invested therein | 34,741.24 |
| Balance of cash uninvested | 78.76 |
| Total | 3,133,260.00 |

### OPINION.

MILLIKEN: In view of the conclusion which we have reached, we find it necessary to discuss but one question and that is, whether the annuities received by the petitioners under the will of James Gordon Bennett constitute income which is taxable by reason of the provisions of the Revenue Act of 1921. The applicable provisions of that Act are:

SEC. 213. That for the purposes of this title (except as otherwise provided in section 233) the term "gross income"—

(a) Includes gains, profits, and income derived from salaries, wages, or compensation for personal service (including in the case of the President of the United States, the judges of the Supreme and inferior courts of the United States, and all other officers and employees, whether elected or appointed, of the United States, Alaska, Hawaii, or any political subdivision thereof, or the District of Columbia, the compensation received as such), of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for

gain or profit, or gains or profits and income derived from any source whatever. The amount of all such items (except as provided in subdivision (e) of section 201) shall be included in the gross income for the taxable year in which received by the taxpayer, unless, under methods of accounting permitted under subdivision (b) of section 212, any such amounts are to be properly accounted for as of a different period ; but

(b) Does not include the following items, which shall be exempt from taxation under this title :

\*        \*        \*        \*        \*        \*        \*

(3) The value of property acquired by gift, bequest, devise, or descent (but the income from such property shall be included in gross income)   \*   \*   \*

SEC. 219. (a) That the tax imposed by sections 210 and 211 shall apply to the income of estates or of any kind of property held in trust, including—

(1) Income received by estates of deceased persons during the period of administration or settlement of the estate ;

\*        \*        \*        \*        \*        \*        \*

(4) Income which is to be distributed to the beneficiaries periodically, whether or not at regular intervals, and the income collected by a guardian of an infant to be held or distributed as the court may direct.

\*        \*        \*        \*        \*        \*        \*

(c) In cases under paragraphs (1), (2), or (3) of subdivision (a) or in any other case within subdivision (a) of this section, except paragraph (4) thereof the tax shall be imposed upon the net income of the estate or trust and shall be paid by the fiduciary, except that in determining the net income of the estate of any deceased person during the period of administration or settlement there may be deducted the amount of any income properly paid or credited to any legatee, heir, or other beneficiary. In such cases the estate or trust shall, for the purpose of the normal tax, be allowed the same credits as are allowed to single persons under section 216.

(d) In cases under paragraph (4) of subdivision (a), and in the case of any income of an estate during the period of administration or settlement permitted by subdivision (c) to be deducted from the net income upon which tax is to be paid by the fiduciary, the tax shall not be paid by the fiduciary, but there shall be included in computing the net income of each beneficiary that part of the income of the estate or trust for its taxable year which, pursuant to the instrument or order governing the distribution, is distributable to such beneficiary, whether distributed or not, or, if his taxable year is different from that of the estate or trust, then there shall be included in computing his net income his distributive share of the income of the estate or trust for its taxable year ending within the taxable year of the beneficiary. \*   \*   \*

The question presented is whether the annuity received by each of petitioners was a " bequest " which was exempt from income tax under section 213, or constituted distributive income which was taxable under section 219. This question depends upon the construction of the will of James Gordon Bennett. The seventh, eighth and tenth clauses of that will bequeathed to the respective petitioners " an annuity." No limit is placed upon the payment of these annuities. The only direction is that they be paid. The whole estate is charged with their payment. The only way in which any part of the estate can be freed from this charge is found in the thirtieth clause where the executors are given the power to convert property

into money and where it is provided that the property "so sold, conveyed, * * * or exchanged shall be free from all lien or charge of or by reason of any devise, bequest, or annuity given or made by this, my Will, or any Codicil thereto." It is to be noted, however, that this very power of sale or conversion is given to the executors for, among other purposes, the payment of the annuities. So that while the property sold is free of the charge, it is clear that the proceeds remain subject to the payment of the annuities.

Respondent invites our attention to the following excerpt from the thirtieth clause:

I authorize and empower said executors or executor to retain and hold any personal property which may belong to me at the time of my death and to set aside and hold any part thereof to provide for the payment and satisfaction of any annuity given by me.

Giving this provision its broadest construction, it is apparent that there is nothing therein to the effect that any annuity is payable out of the income of the personalty so to be set apart. If such fund, if created, should fail, it is our opinion that the remaining corpus of the estate would remain liable for the satisfaction of the annuities. In those cases where it was the clear intention of a testator that an annuity should be paid out of income or out of a particular fund, such intention must be given full effect. See *Delaney* v. *Van Aulen*, 84 N. Y. 16, and *Irwin* v. *Wollpert*, 128 Ill. 527; 21 N. E. 501. On the other hand, where an annuity is given without limitation and the will merely indicates that the annuity may be paid out of income, the corpus is liable when the income becomes insufficient. Thus, it was said by Judge Denio in *Pierrpont* v. *Edwards*, 25 N. Y. 128—

The only question which I think it necessary to consider, in this case, is whether the bequest of the annuity of $7,000 a year, to the testator's wife, was specific, in the sense that if it could not be paid out of the fund indicated—namely, the income of the trust estate—it was to fail, or to abate, in proportion that the indicated fund should prove deficient; or on the other hand, whether it was intended by the testator that it should be paid; at all events the income of his property given to the trustees being pointed out by way, it is called, of demonstration. I am of opinion that the last mentioned construction is the one which we are bound to place upon the instrument, * * * The leading principle of the cases is that when the testator bequeaths a sum of money, or which is the same thing, a life annuity, in such a manner as to show a separate and independent intention that the money shall be paid to the legatee at all events, that intention will not be permitted to be overruled merely by a direction in the will that the money is to be raised in a particular way or out of a particular fund. (Sir James Wigram in *Dickin* v. *Edwards*, 4 Hare. 273.)

Reading the will of James Gordon Bennett as a whole, it at once becomes apparent that the annuities which it bequeaths are charges upon its whole estate, income, personalty and realty. The James

Gordon Bennett Memorial Home is a residuary legatee and devisee, and gets only what may be left after the annuity charges are paid.

That the annuities provided by the will are in fact bequests, seems clear. See *Pierrpont* v. *Edwards, supra; Clark* v. *Clark*, 147 N. Y. 639; 42 N. E. 275; *Canal Bank* v. *Hudson*, 111 U. S. 66; 3 C. J. 202.

Are these annuities bequests of income within the meaning of section 219, or are they bequests as that term is used in section 213?

Long before the Sixteenth Amendment to the Constitution became effective, a broad distinction had been drawn between a bequest of a pure annuity and a bequest of income. Thus, it is said in section 2 of Chapter XIII of Remsen on the Preparation and Contest of Wills (1907):

An annuity is substantially different from a gift of the income or use of property. An annuity is a fixed amount directed to be paid absolutely and generally without contingency. An income embraces only the net profits after deducting all necessary expenses and charges, and consequently is uncertain in amount.

Annual taxes on principal are deducted from a use or income but not from annuities. * * *

Where the testator sets aside a fund to provide for the payment of an annuity, his will should clearly indicate whether he intends the annuity to be a charge on the corpus or payable only out of the income. Thus, under " a clear gift of an annuity, a direction to set a fund apart to secure it, which is to fall into the residue upon the death of the annuitant," the corpus is still liable to make good arrears. " But if there is a direction to set apart a sum of money in order to pay an annuity out of the dividend with a gift over, the annuitant is not entitled to come upon the corpus, and it is a simple case of tenant for life and remaindermen." So if it is clear that the annuity is to be paid only out of the income each year, or that the corpus is to be looked upon as an entirety after the annuitant's death, the corpus will not be liable for arrears. In the absence of an expressed intent to the contrary, the testator's personal estate is primarily liable for the payment of an annuity. In some states it is provided by statute that, if the funds or property out of which annuities are payable fails, resort may be had to the general assets, as in case of a general legacy. Some testators provide for the purchase of annuities; some create a trust for their payment; others simply direct their payment out of the estate.

In *Peck* v. *Kinney* (C. C. A.), 143 Fed. 76, it is said:

There is this distinction between income and an annuity. The former embraces only the net profits after deducting all necessary expenses and charges; the latter is a fixed amount directed to be paid absolutely and without contingency. *Ex parte McComb*, 4 Bradf. Sur. (N. Y.) 151, 152. "An annuity is defined as ' a stated sum, payable annually ' (*Pearson* v. *Chace*, 10 R. I. 455), or as ' a yearly payment of a certain sum of money granted to another in fee, for life, or for years.' *Kearney* v *Cruikshank*, 117 N. Y. 95, 22 N. E. 580; *Bartlett* v. *Slater*, 53 Conn. 102, 22 Atl. 678, 55 Am. Rep. 73." *Goodyear Shoe Machinery Co.* v. *Dancel*, 119 Fed. 692, 56 C. C. A. 300. It is a grant of a certain sum of money payable at the expiration of fixed, consecutive periods, for a definite term or for life. Lumley's Law of Annuities, 1.

The court then quotes from the oft-cited case of *Booth* v. *Ammerman*, 4 Bradf. 129. From the last case we make the following excerpt:

An annuity is a stated sum per annum, payable annually unless otherwise directed. It is not income or profits, nor indeterminate in amount varying according to the income or profits, though a certain fund may be provided, out of which it is to be payable. * * * The income or interest of a certain fund is not an annuity, but simply profits of certain property, to be earned, which may vary more or less.

To the same effect see *Dulaney's Administrator* v. *Dulaney*, 105 Va. 429; 54 S. E. 40, and *Overton* v. *Lea*, 108 Tenn. 505; 68 S. W. 250.

From the above, three things become apparent: (1) That each annuity herein involved is in fact a bequest; (2) that these annuities do not constitute bequests of income; and (3) that each annuity is a charge upon the whole estate.

Since no income, nor any share of income, has been bequeathed to any one of the petitioners, it can not be held that such petitioner was entitled to a " distributive share of the income of the estate or trust," which is taxable under section 219. We can not see that the fact that the number of years during which a legacy is payable is determinable by the life of the beneficiary makes that income which otherwise is not income.

Respondent contends that these proceedings are governed by *Irwin* v. *Gavit*, 268 U. S. 161, and *Heiner* v. *Beatty*, 17 Fed. (2d) 743. In our opinion, these cases are not in point. In the *Gavit* case, there was a bequest of a certain share of income arising from a certain trust fund. In these proceedings, we have no bequests of income, but a bequest of a sum certain, payable at all events each year so long as the legatee lives. In the *Beatty* case the testator, Carnegie, did bequeath an annuity but he made the annuity payable (in the case the executors did not purchase it from an insurance company) out of the income of a trust fund. The Circuit Court of Appeals reversed the decree of two judges of the lower court (10 Fed. (2d) 390) holding the annuity exempt from income tax, but in so doing placed their decision squarely on the ground that the bequest was one of income from a trust. Thus the appellate court said:

The first part of the Carnegie will with which we are concerned is the Fifth Article. It reads as follows:

Fifth: I give to each of the persons hereinafter in this Fifth Article named an annuity of the annual amount in this Fifth Article set after his or her name, to be paid semiannually during the annuitant's life, that is to say, to * * * Mr. Beatty Art-Dept wife succeeding five thousand dollars.

If the will had stopped there, it is possible the testator's provision for John W. Beatty would have been a bequest, payable in semi-annual installments directly from the estate, and all payments made to him year by year would have been exempt from taxation under paragraph 3 of subdivision (b) of section 213 of the cited act (Comp. St. §6336 1/8ff). However, the will did

not stop there, but, going on, it provided in the very next article, by words whose significance we have emphasized by italics, as follows:

Sixth: I direct my executor and *trustee* either to *set apart, hold in trust, invest and keep invested, in separate funds, one for each annuitant,* sufficient sums to *produce* by the clear net interest and *income* thereof respectively, the several annuities provided in the Fifth Article of this will, * * * and to pay the said several annuities *from the* interest and *income* of the *respective funds* in semi-annual payments, *or* to purchase such annuities in life insurance companies. * * *

By the Eighth Article the testator authorized his executor and trustee (who is one corporate person), "in its discretion, to retain for investment of the principal of any of the *trusts,* herein provided for, any of the securities left by me." And, finally, by the same article he authorized the executor and trustee to sell any of the securities coming into its hands and reinvest the proceeds.

Recapitulating, these provisions created, somewhat inartificially, yet, we think with no lack of certainty, out and out trusts. They provided a capital sum for each annuitant, directed that it be "set apart" and "held in trust" for him and that from the interest and income therefrom accruing payment of a definite sum to be made to him semi-annually. Having all the earmarks of formal trusts, the executor and trustee, believing itself charged therewith, exercised the election given it to create capital trust funds by withdrawing from the body of the estate sufficient securities to produce the amounts to be paid annually to the more than forty annuitants. For John W. Beatty it took, "set apart" and "held in trust" one $100,000 United States Steel Corporation Registered 50 year 5 per cent Gold Bond and two $5,000 bonds of the same issue, and of the interest received therefrom it paid him $5,000 a year. This is what was done. But the testator directed, in the alternative and at the trustee's election, another way by which the trustee could provide for the payment of the annuities, namely; by taking a part of the principal of the estate and with it buy annuities. Thus, in both ways the testator willed that parts of the corpus of his estate be appropriated as capital sums from which income in amounts sufficient to pay the annuities could be obtained. In neither way—indeed, nowhere in the will—did he provide for payment of annuities from the principal of his estate. In other words, the testator, through alternative ways, specifically indicated and fully provided the sources of income to be paid the annuitants. What the will intended the annuitant here to receive and what actually he did receive was the income derived from a source which we think is sufficiently definite to fall within the statute's denomination of "income derived from any source whatever."

We look in vain for a provision in the Bennett will similar to that in the Carnegie will. We find no bequest of income.

Respondent cites *Cummings' Executor* v. *Cummings,* 146 Mass. 501; 16 N. E. 401, to the effect that annuities such as those before us are payable primarily from income. The same would be true of any legacy, for no court would permit an executor to sell property to pay a legacy if he had income available. So also such a legacy is payable out of personalty rather than realty. All these are matters of administration with which annuities have no concern.

Next, it is contended that since the annuities were paid in the taxable years involved, from income, the annuities constitute income. It may be noted that during the first two years after Bennett's death

all the annuities herein involved were paid out of the corpus of the estate. The same, for all we know, may be done later. It is because certain testators have thought that they had ample means to pay annuities and their expectations have failed, that the cases which we have cited, have arisen. The fact that income is used to pay an obligation does not necessarily make what was income to the payor, income to the payee. The payment by one from his salary of borrowed money without interest, does not make the money so paid income to the recipient. Neither would the payment of a simple legacy from income of an estate, make the legacy taxable as income.

Respondent calls our attention to the language of Mr. Justice Holmes in *Irwin* v. *Gavit, supra,* where he states that if the income therein involved was not taxable, Congress " has missed so much of the general purpose that it expresses at the start." We have not before us the question of the extent to which the income of the estate of James Gordon Bennett is taxable, and express no opinion on that question. All we have before us is whether these annuities constitute taxable income in the hands of the beneficiaries. But even if our decision should result in this income becoming nontaxable at all events, we can only say that this results from the provisions of the law. The Supreme Court, construing the same act that was construed in the *Gavit* case, held in *Smietanka* v. *First Trust & Savings Bank,* 257 U. S. 602, that income received by a trustee to be accumulated for unborn and unascertained beneficiaries, was not taxable.

We are aware that the British courts have held that annuities similar to those here involved, are subject to the British income tax, but in *Merchants' Loan & Trust Co.* v. *Smietanka,* 255 U. S. 509, it was said :

The British income tax decisions are interpretations of statutes so wholly different in their wording from the acts of Congress which we are considering that they are quite without value in arriving at the construction of the laws here involved.

We have for application, sections 213 and 219 of the Revenue Act of 1921. It is only by a strained construction that we can by any possible means arrive at the conclusion that these annuities are taxable under section 219, to the petitioners, as distributive income. On the other hand, section 213 grants an exemption in cases of bequests. There is no doubt that each of these annuities is a bequest and there is no doubt that none of them is made payable by the will of James Gordon Bennett, out of income. To hold that the mere fact that in the taxable years involved, the annuities were paid out of income and therefore were distributive income to the recipients, would give a construction to the taxing statute far beyond the meaning of the words used. When we are compelled to choose between clear words

of exemption and a strained construction of a taxing provision, we accept that which is clear rather than that which involves doubt.

*Judgment will be entered on 15 days' notice, under Rule 50.*

SMITH, dissenting: I perceive no valid distinction between this case and that of *Irwin* v. *Gavit*, 268 U. S. 161. That case arose under the Revenue Act of 1913, which imposed an income tax upon income " arising or accruing from all sources " and included " the income from but not the value of property acquired by gift, bequest, devise or descent." During the years 1913, 1914, and 1915 Gavit received the income from a certain fund as a bequest. The court held that it was liable to income tax and said:

But we think that the provision of the act that exempts bequests assumes the *gift of a corpus* and contrasts it with the income arising from it, but was not intended to exempt income properly so called simply because of the severance between it and the principal fund * * * The money was income in the hands of the trustees and we know of nothing in the law that prevented its being paid and received as income by the donee." (Italics ours.)

If the gift of a corpus is the " bequest " that is not liable to income tax then the petitioners in the case at bar did not receive a bequest. They simply received an annuity which, during the taxable year, was paid from the income of the estate. Clearly, under section 219(d) of the Revenue Act of 1921, the fiduciary making the estate income-tax return was entitled to deduct from gross income the amount of the annuity paid to each of the petitioners during the taxable year. Under the decision of the Board neither the fiduciary nor the beneficiary can be held liable to income tax in respect of the income received.

Furthermore, under the decision of the court in *Irwin* v. *Gavit, supra*, the petitioners in the case at bar had an interest in the estate of the decedent and the income from that interest is liable to income tax the same as the income which Gavit received in the above cited case.