# DECISIONS

OF THE

## SUPREME JUDICIAL COURT

OF

### MASSACHUSETTS

---

THOMAS W. PROCTOR & others, trustees, *vs.* FRANK R. LACY & others.

Suffolk.    December 8, 1927. — March 2, 1928.

Present: RUGG, C.J., BRALEY, CROSBY, CARROLL, & SANDERSON, JJ.

*Trust*, Construction of instrument creating trust. *Devise and Legacy*, "Heirs," Separate provisions for single beneficiary, Per stirpes or per capita. *Words*, "Legal heirs," "Heirs," "Per capita."

Upon a petition by trustees under a will for instructions, the following facts appeared: The testator had had two sons. One had died, while engaged to be married. The other survived him, married, and died childless, leaving a widow. At the time the will was made, the testator was eighty-five years of age and a sister who survived him was eighty-one. To the woman to whom his deceased son had been engaged, and whom he had taken into his home as a daughter, the testator gave $25,000 outright. From the residue of the estate, amounting to about $2,500,000, he established a trust, with provisions that from the income his surviving son should be paid $40,000 a year and the woman to whom his deceased son had been engaged should be paid $4,000 a year, during their respective lives. At the death of the son before the woman, the trustees were directed "to set apart as a distinct Fund out of the remainder of said Trust Fund the sum of $100,000 and to pay the net annual income thereon quarterly to the . . . [woman] for the term of her natural life; and upon her decease the Principal of the said Trust Fund with its accumulations if any created for her benefit shall fall into and become a part of the residue and remainder of my estate to be disposed of as hereinafter provided."

It also was provided that these trusts should have priority and preference in and over the other provisions for the disposition of the residue and that if the income for their benefit should fall below the stated sums the trustees were authorized to resort to the principal of the trust fund to make up any deficiency during their lives. The son died before the woman. *Held*, that the testator intended that the $100,000 trust fund for the woman should be in addition to all other provisions made for her.

A further provision of the will above described was that as and when the trusts created under the will, or any one of them, should cease to exist, the trustees should "convey, transfer, distribute and divide, freed and discharged of all trust in equal shares per capita to and between my legal heirs then surviving who are to be determined by the Laws of Massachusetts relating to the descent and distribution of property as then in force; always however excepting therefrom in such distribution" a certain nephew and his issue. The next of kin of the testator, determined as of the date of distribution of the fund, were four nephews, one of whom was the nephew specifically excluded, four grandnephews and a grandniece. The will was drafted by a member of the bar of many years' standing and experience. *Held*, that

(1) The testator's evident intention was that for this purpose his heirs should be determined as of the time of distribution, rather than the time of his own death;

(2) The testator referred to the laws of Massachusetts relating to the descent and distribution of property for the purpose of determining the individuals who would be entitled to share in the distribution and, by using the words "in equal shares per capita," he directed that each of the persons so determined should receive a share of the estate to be divided equal to the share received by each of the others;

(3) Each of the next of kin, excluding the named nephew, was entitled to one eighth of the estate to be distributed by the trustees.

PETITION, filed in the Probate Court for the county of Suffolk on April 8, 1927, by trustees under the will of Wallace F. Robinson, for instructions.

The respondents were Frank R., Clive W., and Burritt S. Lacy, grandnephews of the testator, being sons of a daughter of a brother of the testator; Westel R. Willoughby, grandnephew, and Laura W. Rowe, grandniece, being children of another daughter of the same brother of the testator; George R. Whitten, nephew, being a son of a sister of the testator who had survived him but had died before the testator's son Harry E. Robinson; Arthur H. and Irwin E. Keyes, nephews, being sons of a brother of the testator who died before him, after having changed his name to Keyes; Katharine G. Robinson, widow of Harry E. Robinson; The First National

Bank of Boston, executor of the will of Harry E. Robinson, son of the testator; and Harriet E. Blair.

The petition was heard by *Prest*, J. It appeared that the estate remaining to be distributed at the time of the hearing was about $2,500,000. The record contains the following statement, agreed to by the parties: "The will of the testator, Wallace F. Robinson, was drafted by Melvin O. Adams, Esquire, a member of the Boston Bar of many years standing and experience." Material facts are stated in the opinion. By order of the judge, a final decree was entered giving the trustees the following instructions:

"1. That the corpus of the George W. Bordley trust should be added to the residue as provided in Article 13 of the will.

"2. That the trust fund of $100,000 for Harriet E. Blair is additional to all other provisions in her favor.

"3. That the trustees should, owing to the death of Harry E. Robinson, now distribute the residue.

"4. That the residue of the trust estate with accumulations should be distributed as follows: one fifth to George R. Whitten; one fifth to Arthur H. Keyes; one fifth to Irwin E. Keyes; one fifteenth to Frank R. Lacy; one fifteenth to Clive W. Lacy; one fifteenth to Burritt Lacy; one tenth to Westel R. Willoughby and one tenth to Laura W. Rowe."

The executor of the will of Harry E. Robinson and the grandnephews and grandniece appealed. Later, the executor of the will of Harry E. Robinson waived its appeal, as stated in the opinion.

*R. Grant*, for the petitioners, stated the case.

*J. J. Kaplan*, (*F. A. Fisher* with him,) for Frank R. Lacy and others.

*E. O'Callaghan*, (*F. E. Dickerman* with him,) for The First National Bank of Boston, executor.

*S. L. Whipple & W. Keyes*, (*E. O. Proctor* with them,) for George R. Whitten and others.

*G. S. Fuller*, for Harriet E. Blair.

SANDERSON, J. The questions to be decided relate to the construction of certain clauses in the will of Wallace F. Robinson. The material facts appear in allegations of the

petition admitted in the answers and in statements of counsel made to the judge of probate.

The testator died in 1920, survived by his son and only heir at law, Harry E. Robinson, who died in 1927. This son married after the testator's death and left a widow but no children surviving him. Another son died in 1893 unmarried. The will was executed August 15, 1918. The testator, after disposing of a part of his property, gave the residue to trustees upon the following trusts:

"Clause a. To pay out of the net income from said Trust Property quarterly or oftener in their discretion to my son Harry E. Robinson for the term of his natural life the sum of Forty Thousand (40,000) Dollars annually.

"Clause b. To pay out of the remainder of the net income from said Trust Property quarterly or oftener in their discretion to Harriet E. Blair aforesaid for the term of her natural life the sum of Four Thousand (4,000) Dollars annually.

"Upon the decease of my son Harry E. Robinson if at such time the said Harriet E. Blair is living, I direct my Trustees hereinafter named to set apart as a distinct Fund out of the remainder of said Trust Fund the sum of One Hundred Thousand (100,000) Dollars and to pay the net annual income thereon quarterly to the said Harriet E. Blair for the term of her natural life; and upon her decease the Principal of the said Trust Fund with its accumulations if any created for her benefit shall fall into and become a part of the residue and remainder of my estate to be disposed of as hereinafter provided." The testator then made certain provisions against the alienation of this income by any payee thereof. In an earlier clause of the will, a trust fund of $2,000 had been established for George W. Bordley, an employee who died in 1925.

The first and third questions asked were in substance whether upon the death of Bordley it was the duty of the petitioners to distribute any portion of the trust property held by them, and whether because of the death of Harry E. Robinson the trustees should now distribute among the per-

sons entitled thereto the residue of the principal of the trust property with accumulations. The judge of probate, in answering these questions, ordered that the corpus of the George W. Bordley trust should be added to the residue and that the trustees should, owing to the death of Harry E. Robinson, now distribute the residue.

Since the case was argued in this court, The First National Bank of Boston, executor of the will of Harry E. Robinson, has waived its appeal and assented to the affirmance of the decree of the Probate Court entered on the petition for instructions, and counsel for all the appellants have stated in writing that they understand as a result of this waiver there is no appeal pending before this court with respect to instructions numbered 1 and 3 of the decree of the Probate Court, leaving for decision only the appeals with reference to instructions numbered 2 and 4. The executor of the will of Harry E. Robinson was the only party contending that the distribution of the residue should be made on the death of Bordley. The first question remaining to be decided is whether the trust fund of $100,000 for Harriet E. Blair was intended by the testator to be additional to the other provisions for her or was intended to be in substitution for and in reduction of the earlier provisions.

It appeared that the beneficiary, Harriet E. Blair, had been engaged to be married to the son of the testator who died in 1893, and that after the death of the testator's wife in 1910, at his invitation Miss Blair took charge of his house and continued in charge until his death, being treated by him as a daughter. At the time of the testator's death she was about fifty-three years of age and the testator's surviving son was then forty-eight. A legacy of $25,000 was given Miss Blair in addition to the provisions for her in the residuary clause. The testator provided that the trusts established for the benefit of his son and Miss Blair should have priority and preference in and over the other provisions for the disposition of the residue and that if the income for their benefit should fall below $40,000 and $4,000 annually, as therein provided, the trustees were authorized to resort to the principal of the trust fund to make up any deficiency in such income

in any year during the lives of his son or Miss Blair or either of them.

"Separate provisions of a will in favor of the same legatee are to be considered cumulative, unless a contrary intention is apparent from the terms of the will." *Bates, petitioner,* 159 Mass. 252, 257. *Westgate* v. *Farris,* 189 Mass. 587, 589. The intention of the testator that the trust created to provide an annual payment of $4,000 was not to cease at the death of Harry E. Robinson was indicated by the provision authorizing the trustees to resort to the principal to pay this income if in any year during Miss Blair's life the income was insufficient to pay it. The will directs that this sum of $100,000 shall be set apart as a distinct fund out of the remainder of the trust fund, an expression which would naturally be used if the trust first established was to be continued after the death of Harry E. Robinson for the purpose of earning income to pay the annual sum of $4,000 to Miss Blair. The words of the will that at Miss Blair's death this $100,000 fund is to "fall into and become a part of the residue and remainder," suggest that the testator understood that then there would be a residue or remainder for it to fall into. The direction to set apart this sum as a distinct fund indicates an intention to create a new or additional fund, and there is no clear indication in the will that upon the death of the son all trusts were to end except the one created at that time. In our opinion the testator intended that the $100,000 trust fund for Harriet E. Blair should be additional to all other provisions made for her.

The remaining question relates to the division of so much of the trust fund as should now be distributed. The testator provided in substance that as and when the trusts or any one of them created under the will should cease to exist, the trustees should "convey, transfer, distribute and divide, freed and discharged of all trust in equal shares per capita to and between my legal heirs then surviving who are to be determined by the Laws of Massachusetts relating to the descent and distribution of property as then in force; always however excepting therefrom in such distribution Charles O. Whitten my nephew and he not surviving the issue if any

of said Charles O. Whitten." The testator's evident inten-
tion was that for this purpose his heirs should be determined
at the time of distribution, rather than at the time of his
own death, *White* v. *Underwood*, 215 Mass. 299, *Carr* v.
*New England Anti-Vivisection Society*, 234 Mass. 217, and
that so much of the residue as was not needed to support the
trusts remaining and to carry out the other duties of the
trustees should be distributed among the persons so de-
termined. The testator's heirs at law as determined by
those laws at the time of Harry E. Robinson's death were
four nephews, three grandnephews (children of a deceased
niece of the testator), and a grandnephew and grandniece
(children of another deceased niece). Two of the nephews
were children of the brother who died before the testator,
and the other two were children of a sister who survived
the testator. One of the two nephews last referred to was
the Charles O. Whitten who was disinherited. The direc-
tion in the will that the legal heirs with the exception of this
one are to be determined by the laws of Massachusetts re-
lating to the descent and distribution of property necessarily
means that three nephews, the four grandnephews and the
grandniece are to share in the property.

The manner in which the testator intended these heirs to
share remains to be considered. The judge of the Probate
Court decided that they should take in the proportions in
which heirs inherit intestate property, and ordered that
each of the three nephews should receive one fifth, each of
the two children of one of the deceased nieces one tenth, and
each of the three children of the other deceased niece one
fifteenth. The grandnephews and grandniece contend that
the testator intended that each of his legal heirs should have
the same share of his estate as every other heir received,
and that each should be given one of eight equal parts.

In reaching our conclusion as to the proportions in which
the testator intended the residuary beneficiaries to share
in his estate we have found no facts of controlling importance
outside of the language used in the residuary clause. At
the time the will was executed the testator was eighty-five
years of age, and the sister who survived him was eighty-one;

the nephews who take under the residuary clause were fifty-five, fifty-three and forty-four years of age respectively; and the ages of the grandnephews and grandniece whose parents had died before the will was made ranged from twenty-one to thirty-seven years.

The testator probably thought that his sister would not be living when the time for distribution should come. He expressly provided that one of her sons should not share in the final distribution of the estate. He may have contemplated the possibility that his son would marry and die leaving children who would become the residuary beneficiaries. Otherwise, in any division occurring after the son's death, the residue would go to more remote kindred, some of whom would probably be as far removed as grandnephews. The will was drafted by a member of the bar of many years' standing and experience, and it is fair to suppose that the testator in using the language which appears in the residuary clause had in mind the interpretation of similar words and clauses in cases decided in this Commonwealth. A rule of construction often adopted in those cases in the absence of anything to show a different intention on the part of the testator is that a devise or bequest to "heirs" or "issue" refers to those who would take under the statute relating to intestate succession, and also indicates that they are to share in the estate in the manner and proportion designated by such statutes. *Daggett* v. *Slack,* 8 Met. 450. *Ernst* v. *Rivers,* 233 Mass. 9, 14. Likewise when the testator has expressed a wish that his heirs should share equally, the desire that they should so share has been given effect by applying the words to an equal division between classes of heirs in accordance with the statute relating to the descent and distribution of property. *Allen* v. *Boardman,* 193 Mass. 284, 287, and cases cited. *McClench* v. *Waldron,* 204 Mass. 554.

By our statute, if there are no issue and no surviving brother or sister, the intestate estate goes to all of the issue of his deceased brothers and sisters. If all such issue are in the same degree of kindred to the intestate they share the estate equally, otherwise according to the right of represen-

tation.   G. L. c. 190, § 3 (5).   In cases where this section of the statute applies, those who are in the nearest degree of kindred "inherit *per capita* in equal shares, while those in a more remote degree take *per stirpes,* or such portion as their immediate ancestor would inherit if living."   *Balch* v. *Stone,* 149 Mass. 39, 42.

The reference to the word "heirs" in a will has many times been held to show that the testator intended to incorporate into it the statute providing for the descent of the real estate of an intestate, unless a different intention appears. *Boston Safe Deposit & Trust Co.* v. *Blanchard,* 196 Mass. 35. *Rand* v. *Sanger,* 115 Mass. 124.   *Cummings* v. *Cummings,* 146 Mass. 501.   *Ernst* v. *Rivers,* 233 Mass. 9.   *Temple* v. *Russell,* 251 Mass. 231.

A division of an estate *per capita* means by the number of individuals share and share alike as opposed to a division *per stirpes* where those of more remote degree of kindred to the testator or intestate take by right of representation.   *Leland* v. *Adams,* 12 Allen, 286.   *Balcom* v. *Haynes,* 14 Allen, 204, 205.   *Hill* v. *Bowers,* 120 Mass. 135.   *Cummings* v. *Cummings, supra.*   *Balch* v. *Stone,* 149 Mass. 39, 42.   *Townsend* v. *Townsend,* 156 Mass. 454, 457.

Our statutory provisions for the descent or distribution of intestate property cannot be considered as a distribution equally *per capita* except in case the heirs happen to be in equal degree of kindred to the testator.   In all other cases the distribution is *per stirpes* or by right of representation. The direction that an estate be divided equally *per capita* is not consistent with but opposed to a division of the estate *per stirpes.*   *Russell* v. *Welch,* 237 Mass. 261, 264.

Persons are supposed to know the meaning of the terms they use unless there is something to show the contrary. *Siders* v. *Siders,* 169 Mass. 523, 524.   When the testator used the words "per capita" with the words "in equal shares" he clearly expressed the intention that each beneficiary was to take in his own right as an individual and not by right of representation.   "The words used are not susceptible standing by themselves of any other interpretation."   *Russell* v. *Welch, supra,* page 263.   We think that the language of the

will shows that the testator referred to the laws of Massachusetts relating to the descent and distribution of property for the purpose of determining the individuals who would be entitled to share in the distribution and that by using the words "in equal shares per capita" he directed that each of the persons so determined should receive a share of the estate to be divided equal to the share received by each of the others. This interpretation of the will gives a natural meaning to all of the words used and in our opinion will accomplish the purpose of the testator.

By reason of the waiver of appeal by the only party contesting the validity of instructions numbered one and three in the decree the clauses bearing those numbers are affirmed.

The decree in so far as it relates to the provisions for Harriet E. Blair is affirmed; and in so far as it relates to the proportions in which the heirs share in the part of the residue now to be divided is to be modified by ordering that the trust estate with accumulations shall be distributed as follows: one eighth thereof to George R. Whitten; one eighth to Arthur H. Keyes; one eighth to Irwin E. Keyes; one eighth to Frank R. Lacy; one eighth to Clive W. Lacy; one eighth to Burritt Lacy; one eighth to Westel R. Willoughby; and one eighth to Laura W. Rowe. Costs taxed as between solicitor and client are to be in the discretion of the Probate Court.

*Ordered accordingly.*