EDWARD H. R. GREEN & others, trustees, *vs.* WILLIAM H. HUSSEY & others.

Bristol.    October 22, 1917. — November 27, 1917.

Present: RUGG, C. J., BRALEY, DE COURCY, PIERCE, & CARROLL, JJ.

*Devise and Legacy.   Words,* "Lineal descendants."

A testatrix, who made her will and died when Gen. Sts. c. 91, § 1, cl. 1, was in force, created a trust, under which the net income of a residuary fund was to be paid to a niece of the testatrix during her life and, upon the death of such niece, the trustees were ordered to distribute and divide the whole of the residuary estate "to and among all the lineal descendants then living of my grandfather, G H, and if all the lineal descendants aforesaid then living are in the same degree of kindred to the said G H, they shall share the said Estate equally and shall be paid in equal shares; otherwise they shall take according to the right of representation, and the said Trustees shall pay them respectively such portions as shall according to the right of representation belong to them." The testatrix died in 1865. Her grandfather, G H, died in 1823. Her niece, who was the beneficiary for life, died in 1916. At the time of the death of the niece no child of G H was living. Three of his grandchildren were living and there were living descendants of forty-two other grandchildren. *Held,* that each of the three living grandchildren of G H took one forty-fifth part of the residue and that one forty-fifth part should be distributed among the descendants of each of the other forty-two grandchildren by right of representation in accordance with the rule for the distribution of intestate estates established by Gen. Sts. c. 91, § 1, cl. 1, which was the same rule established by the statutes in force at the time of the death of the beneficiary for life.

Where the language of the residuary clause in a carefully drawn will incorporates the language of the statute of distributions in force when the will was made, which also was in force at the time of the death of the testator, and where no reason is shown for a different interpretation, the construction of the clause should follow the judicial construction of the statute.

PETITION, filed in the Probate Court for the county of Bristol on August 29, 1916, by the trustees under the will of Sylvia Ann Howland, late of New Bedford, who died on July 2, 1865, for a decree authorizing the distribution of the trust fund held by them among the lineal descendants of Gideon Howland, late of Dartmouth, (who died on May 23, 1823,) who were living at the death of Hetty Howland Robinson Green, the beneficiary for life under the trust, who died on July 3, 1916.

It appeared that of the grandchildren of Gideon Howland there were on July 3, 1916, forty-five who either were living or whose descendants were living at that date; and that of these forty-five grandchildren three were living on July 3, 1916, and forty-two had died.

The Probate Court made a decree ordering that the trustees should convert the trust estate into cash and should distribute the proceeds to the persons named therein in the proportions there stated, giving to each of the three living grandchildren one forty-fifth share and to the descendants of each of the other forty-two grandchildren in question one forty-fifth share.

Certain of the respondents appealed from the decree.

The case came on to be heard before *Crosby*, J., who by agreement of counsel reserved all questions of law arising in the case upon the record and an agreed statement of facts for determination by the full court, such decree to be entered as justice might require.

*O. Prescott*, for the petitioners, stated the case.

*J. C. O'Conor* (of New York), for the executors under the will of W. F. Mott and for Edith M. Doan.

*E. A. Stern* (of New York), for the respondent Howland Bowne.

*F. A. Milliken*, for the respondents Gideon Allen, Jr., and others.

*W. C. Parker*, for the respondent Daniel H. Grinnell.

*H. C. Hunt* (of New Jersey), for the respondent William H. Hussey.

*W. Harison & H. A. Cushing*, for the respondents Irving Grinnell and Josephine Grinnell Smith, submitted a brief.

*J. E. N. Shaw*, for the respondents Louisa I. Sawyer and others, submitted a brief.

*G. Geils, Jr.*, guardian *ad litem* for Mary A. Labadie and others, submitted a brief.

BRALEY, J. The testatrix by the twelfth or residuary clause of her will created a trust the net income of which was to be paid to Hettie H. Robinson during her life, and upon her decease the trustees and their successors in office were directed and ordered to pay over, distribute and divide the whole of the residuary estate "to and among all the lineal descendants then living of my grandfather, Gideon Howland, and if all the lineal descendants aforesaid then living are in the same degree of kindred to the said Gideon Howland, they shall share the said Estate equally and shall be paid in equal shares; otherwise they shall take according to the right of representation, and the said Trustees shall pay them respectively such portions as shall according to the right of representation belong to them." The equitable life estate having terminated, the trustees are required to make distribution, and the questions for decision are who are the persons entitled to participate, and, when they are ascertained, in what proportions are they to share the fund. Gideon Howland died on May 23, 1823, and none of his thirteen children were living at the date of the will. The words "lineal descendants" however embrace all those even to the remotest generation who by consanguinity trace their lineage to him. *Houghton* v. *Kendall*, 7 Allen, 72, 76. *Swasey* v. *Jaques*, 144 Mass. 135, 138. *Leonard* v. *Haworth*, 171 Mass. 496. *Morse* v. *Hayden*, 82 Maine, 227, 230. *Levy* v. *M'Cartee*, 6 Pet. 102, 112. *Ralph* v. *Carrick*, 11 Ch. D. 873, 883. It appears that eleven of the children had issue, and if his forty-five grandchildren had all been living when the life estate fell in, they would have shared the residue in aliquot parts. *Knapp* v. *Windsor*, 6 Cush. 156, 162. But, even if only three survived, the survivors with the issue of the deceased forty-two grandchildren fully answer the designation. It is in substance contended by the appellants, that, as the grandchildren and great-grandchildren are not in the same degree of kindred, and hence cannot take in equal shares, and as the line of descent begins with Gideon's children who had issue, and as all the lineal descendants living when the time for their ascertainment culminated were the issue of those children, the residue first should be divided into eleven parts instead of into forty-five parts, and distribution decreed accordingly. *Allen* v. *Boardman*, 193 Mass. 284, 287.

This construction however reads out of the will "if all the lineal

descendants aforesaid then living are in the same degree of kindred," as well as the words "right of representation," if the lineal descendants while one in blood were of diverse kinship. The clause in question is free from ambiguity, and its wording clear and exact. If the testatrix had intended that division should be based in accordance with the number of her uncles and aunts who had predeceased her leaving issue, she would have said so in unmistakable terms. It is her intention which must control, and be given effect unless forbidden by some positive rule of law. The Gen. Sts. c. 91, § 1, cl. 1, as to intestate estates were in force when the will was executed, and when the testatrix died. It is there provided, that an intestate's interest in "land, tenements, or hereditaments" shall descend subject to his debts "In equal shares to his children and the issue of any deceased child by right of representation; and if there is no child of the intestate living at his death, then to all his other lineal descendants; if all the descendants are in the same degree of kindred to the intestate, they shall share the estate equally; otherwise they shall take according to the right of representation." And by § 12, "Inheritance or succession, 'by right of representation,' takes place when the descendants of a deceased heir take the same share or right in the estate of another person that their parent would have taken if living. . . ." It was settled when she died that the nearest in degree of the descendants of her grandfather would take equally, not by inheritance from their parents, because nothing passed to their parents which the grandchildren could inherit, but by force of the will as the nearest living blood kin. *Knapp* v. *Windsor,* 6 Cush. 156. *Sedgwick* v. *Minot,* 6 Allen, 171. The testatrix intended equality of division, and as we have said she took in all living lineal descendants of every degree. A comparison of the essential words shows that the will follows the language of the statute. The reproduction cannot be regarded as a mere coincidence in an instrument where clarity and accuracy of statement are everywhere apparent. Its language having been incorporated, no sufficient reason has been shown why the judicial construction of the statute should not be followed and the purpose of the testatrix effectuated. The Pub. Sts. c. 125, § 1, cl. 1, which re-enacted Gen. Sts. c. 91, § 1, cl. 1, were construed in *Balch* v. *Stone,* 149 Mass. 39, where it was held that those nearest in degree to the intestate took *per capita* while

thóse in a more remote degree took *per stirpes* by right of representation. The R. L. c. 133, § 1, recodified Pub. Sts. c. 125, § 1, and the rule of property announced in *Balch* v. *Stone* has been followed with approval in *Codman* v. *Brooks,* 167 Mass. 499, 503, *Paine, petitioner,* 176 Mass. 242, 245, *Boston Safe Deposit & Trust Co.* v. *Blanchard,* 196 Mass. 35, 41, and *Thompson* v. *Thornton,* 197 Mass. 273, 277, all of which under varying provisions dealt with the devolution of testate estates. We are therefore of opinion that the decree of distribution of the court of probate, that the three grandchildren each should have one forty-fifth of the residue while the remaining forty-two forty-fifths is to be divided among those of more remote degree who take by right of representation the fractional proportions therein stated, should be affirmed.

*Ordered accordingly.*