OLD COLONY TRUST COMPANY, trustee, *vs.* MARY B. LOTHROP & others.

Suffolk.     May 20, 1931. — September 10, 1931.

Present: RUGG, C.J., CROSBY, PIERCE, CARROLL, & WAIT, JJ.

*Devise and Legacy,* Per stirpes or per capita.

A testator in 1885, when he was eighty and his wife forty years of age and there were living four of his children and one grandchild, daughter of a deceased child, made a will which placed a trust fund in the hands of a trustee to pay the income to his widow during her life and at her decease "to pay over and distribute the principal trust fund to and among such children of mine as may be living at her death according to the Statute of Distributions made and established in this Commonwealth, and then in force, the issue of any child now or

hereafter deceased, however, to take the parent's share by right of representation." Other provisions of the will clearly showed that he knew how to express without ambiguity a purpose that a distribution should be made *per stirpes* among descendants of equal degree in the absence of children. The testator died the year after the will was made. The widow did not die until 1930, at which time no children of the testator were living, and of his more remote descendants there were living four grandchildren, two great grandchildren who were the issue of a deceased grandson and one great grandchild who was the issue of a deceased granddaughter. Upon a petition for instructions as to proportions in which distribution should be made, it was *held*, that

(1) The distributees were to be ascertained at the death of the life beneficiary;

(2) Distribution should be made *per capita* among the grandchildren living at the death of the life beneficiary, and by right of representation to the great grandchildren then living.

PETITION, filed in the Probate Court for the county of Suffolk on October 17, 1930, by the trustee under the will of Samuel K. Lothrop, late of Boston, for instructions respecting distribution of the trust fund.

By her answer, Sybil Abbott-Young averred that, being the only representative of the testator's daughter Eliza L. Homans living at the death of the life tenant, she was entitled to a one-third interest in the estate to be distributed. The respondents, trustees under the will of Neville George DeBreton Priestly, averred that as successors to the interest of Charles Homans Priestly they were entitled to a one-sixth part of the trust fund to be divided. Other respondents submitted their rights to the determination of the court.

It appeared that all the children of the testator died before the life beneficiary, the testator's widow. Those who left issue were Thornton K. Lothrop and Eliza L. Homans; the granddaughter living at the testator's death was Olivia B. Tappan, (afterwards James), she being the daughter of a deceased daughter of the testator, Olivia Tappan.

Thornton K. Lothrop left three children, Mary B. Lothrop, Amy L. Coolidge and Thornton K. Lothrop, 2d; and Samuel K. Lothrop and Francis B. Lothrop, sons of a deceased son. All of them were living when the suit was commenced.

Eliza L. Homans left a son, who died without issue before the life beneficiary, and a daughter, Caroline H. Priestly, who died before the life beneficiary leaving a son, Charles H., who died without issue before the life beneficiary, and a daughter, the respondent Sybil Abbott-Young. Charles H. Priestly left a will giving the residue of his estate to his father, Neville George DeBreton Priestly, who also had died and by a will had devised the residue of his estate to the respondents trustees.

Other material facts are stated in the opinion.

The suit was heard by *Dolan*, J., upon the pleadings and an agreed statement of additional facts. By his order there was entered a final decree directing distribution of the trust fund as follows: to Mary B. Lothrop, one sixth; to Amy L. Coolidge, one sixth; to Thornton K. Lothrop, one sixth; to Samuel K. Lothrop, one twelfth; to Francis B. Lothrop, one twelfth; to Sybil Abbott-Young, one sixth; and to Olivia B. James, one sixth. The respondent Sybil Abbott-Young appealed.

*W. L. Payson*, stated the case.

*R. Homans*, (*F. Adams* with him,) for Sybil Abbott-Young.

*J. H. Powers*, (*H. W. Robbins* with him,) for Mary B. Lothrop and others.

RUGG, C.J. This is a petition by the trustee under the will of Samuel K. Lothrop for instructions as to the disposition of a trust estate. The testator died in 1886 at the age of eighty-one years leaving a will executed in 1885, which was duly proved and allowed. He established a trust by "Item Third" of his will and directed the trustees to pay the income to his widow during her life and at her decease "to pay over and distribute the principal trust fund to and among such children of mine as may be living at her death according to the Statute of Distributions made and established in this Commonwealth, and then in force, the issue of any child now or hereafter deceased, however, to take the parent's share by right of representation." The widow, who was the second wife of the testator, died in 1930, at the age of eighty-five, having been about forty years old when the will was executed. When the testator died and

when the will was executed four of his children were living, and one daughter had deceased leaving as her sole issue a daughter, the granddaughter of the testator. One of his sons then had four children, and one daughter two children. Two of his children were then childless. At the death of the life beneficiary the condition of the testator's family was this: All of the children of the testator had died. Two of them left no children. The rights of those two became extinguished because confessedly the remainders to the children were contingent upon their surviving the widow as life beneficiary. One son at his death left three children and two grandchildren, the issue of a deceased child. The daughter who predeceased the testator left a daughter still alive and a party hereto. One daughter died leaving no surviving children but a grandson, who, leaving no issue, predeceased the life beneficiary and whose estate has been finally adjudged to have no interest in the trust fund, and a granddaughter, who is a party hereto. The situation now is that no children of the testator are alive, and of his more remote descendants there are alive four grandchildren, two great-grandchildren who are the issue of a deceased grandson and one great-grandchild who is the issue of a deceased granddaughter. These seven persons are divided into three branches of descendants of the testator, three grandchildren and two great-grandchildren deriving their relationship to the testator from one of his deceased sons, one grandchild deriving her relationship to the testator from the daughter who predeceased the testator, and one great-grandchild deriving her relationship to the testator from one of his daughters, who survived the testator and predeceased the widow.

The controversy is whether the fund is to be divided *per stirpes* between the three branches of descendants of the testator or whether it is to be divided *per capita* among all the grandchildren, and the issue of any grandchild taking by right of representation the share of the deceased parent. The determination of this controversy depends upon the construction to be given to the words of the will already quoted, read in the light of all the testamentary provisions.

It is plain from the express words of "Item Third" that the distributees are to be ascertained at the death of the life beneficiary. That event occurred about forty-five years after the execution of the will and about forty-four years after the death of the testator. The testamentary words to the effect that the principal of the trust fund should be divided among such of the testator's children as might then be living bear indication of expectation that some of his children would then be living. There were four living at the time he signed the will and also when he died. Their ages at that time do not appear. The testator by the words, "the issue of any child now or hereafter deceased" to take by right of representation the share of the parent, provided for the contingency of the death of some of his children before that of the life beneficiary. There are no testamentary words showing in express terms that the contingency was contemplated that all the children might predecease the life beneficiary. The reference to the statute of distributions has remote relation as a practical matter to the distribution "among such children of mine as may be living," because such distribution has been equal in this Commonwealth since St. 1789, c. 2, when the double share to the eldest son was abolished. The testator well may have regarded any change in that particular quite unlikely. Distribution among one's children without more imports equality. The words to the effect that the issue of any deceased child should take the parent's share by right of representation were in substance the same as the statute of distributions then in force. Pub. Sts. c. 125, § 1, First; c. 135, § 3, Second. It is the present statute. G. L. c. 190, § 3 (1). A reading of the clause in question carries the conviction that the reference to the statute of distributions was invoked as the ultimate basis of distribution among the issue of the testator. *Per capita* distribution among issue of equal degree when there are no children has been the provision of the statute for many years. It expresses the natural impulse of mankind. When a *per stirpes* distribution is intended among descendants of equal degree in the absence of children, unequivocal words to that end commonly are used.

The testator knew how to express such purpose without ambiguity if he so desired.  That appears from "Item Fourteenth."  By that item disposition was made of the residue. of the estate of the testator to take effect as soon as the law would permit after his death.  To the only grandchild who was then a child of a deceased child of the testator, there was given somewhat less than the share due her on a *per stirpes* distribution and the balance of the residue was to be distributed among his other children and, in case of the death of any child, the issue of such decedent on a *per stirpes* basis.  There is no doubt about the intent there expressed.  The use of words in the clause in question far less clear and even somewhat cloudy in significance is indicative of a purpose to provide a different basis of distribution.  In this connection the reference to the statute of distributions in the clause here in question and its omission in the residuary clause gain added weight.  Reference to the statute of distributions would be vain if *per stirpes* distribution were intended in the event which has happened or in any event.  The words would be superfluous.  They are repugnant to that construction.  The only way in which the reference to the statute of distributions can be made effective is by applying it in the circumstances which have come to pass.

Apart from refinements of verbal construction, the impression conveyed to the ordinary mind by the clause in question is that it was intended to be applicable according to its express terms in the event that any of the children survived the life beneficiary and that in the event no children survived the statute of distributions then in force should govern the distribution.  Technical analysis of the words used does not clearly enforce this view but it does not efface that impression and is not repugnant to it.

No cases are precisely apposite to the testamentary provision here to be interpreted.  General principles more or less pertinent are discussed in several decisions.  *Knapp* v. *Windsor*, 6 Cush. 156.  *Allen* v. *Boardman*, 193 Mass. 284.  *Thompson* v. *Thornton*, 197 Mass. 273.  *Polsey* v. *Newton*, 199 Mass. 450.  *Green* v. *Hussey*, 228 Mass. 537.

The decree of the Probate Court was right. It is to be affirmed except that costs of the appeal as between solicitor. and client to be paid out of the fund are to be in the discretion of the Probate Court.

*Ordered accordingly.*