HENRY WHEELER, trustee, vs. ROSAMOND S. MOULTON & others.

Suffolk.    March 4, 5, 1935. — May 1, 1935.

Present: RUGG, C.J., CROSBY, PIERCE, DONAHUE, & QUA, JJ.

*Devise and Legacy,* Per stirpes or per capita.    *Trust,* Construction of instrument creating trust.    *Words,* "Parent," "Ancestor," "Child."

Provisions of a will, whereby the testator set up a trust of certain property and directed that at the death of the last survivor of his children, who were life beneficiaries, the trust should cease and the property should be divided among "such persons as would be entitled thereto according to the statutes of this Commonwealth regulating the descent and distribution of intestate estates, if I were the owner thereof" at that time, "it being my will . . . that then the . . . [property] shall vest in my descendants equally according to the statutes aforesaid," properly construed in the light of the entire will, meant that the property at the death of the surviving child should be divided into as many equal shares as there were grandchildren then living and deceased grandchildren whose issue were then living, and that each living grandchild, and the issue of each deceased grandchild taking by right of representation, should receive one share.

PETITION for instructions, filed in the Probate Court for the county of Suffolk on October 19, 1934.

The petition was heard by *Prest,* J. Material facts and a decree entered by his order are described in the opinion. The respondents Samuel Morrill, George Casper Niles, John A. Niles, Elizabeth Niles Stevens, Rosamond S. Moulton, and Gordon N. Morrill appealed.

*A. Wheeler,* stated the case.

*J. Noble,* for Samuel Morrill and others.

*G. C. Richards,* for Rosamond S. Moulton and another.

*J. B. Angevine,* for Emily N. L. Wood and others.

CROSBY, J. These are appeals from a decree of the Probate Court upon a petition for instructions as to the final distribution of a trust estate.

William J. Niles died May 29, 1876, leaving a will which was duly allowed by the Probate Court on June 26, 1876.

This petitioner on March 10, 1910, was duly appointed a trustee under the will and is now the sole surviving trustee. The testator after certain specific devises and legacies gave by the will all the rest and residue of his property of every name and nature to the trustees named in the will in trust, and, after giving certain powers and directions to the trustees, provided as follows: "After the payments of the charges and expenses of managing said estate known as 'Niles Block' they shall pay one third of the net income thereof to my said wife semiannually during life. The other two thirds of said net income, and the whole of said net income, from and after the death of my wife, they shall pay and divide equally, quarter yearly, to and among all my children, share and share alike, the share of each of my daughters however to be paid to her on her sole and separate receipt, and free from the interference or control of any husband. Such payments shall be continued during the joint lives of my children, and during the life of the survivor; but upon the death of any one of them, said trustees shall pay the portion of said income otherwise payable and belonging to such deceased child to his or her heirs at law, and so on until all my children shall have deceased. At the decease of the last survivor of my said children said trust shall cease. The acting trustees under this my will shall then convey my said estate in School Street, in fee simple, to such persons as would be entitled thereto according to the statutes of this Commonwealth regulating the descent and distribution of intestate estates, if I were the owner thereof at the decease of the last survivor of my said children — it being my will that the fee of my said estate on School Street shall remain in my trustees until the death of all my children and that then the same shall vest in my descendants equally according to the statutes aforesaid. In default of such descendants, then to vest in such other persons as would under the statutes aforesaid be my heirs at law if I were the owner of said estate at the decease of the last survivor of my said children. If at the time of the distribution of the income or principal of my said School Street estate as herein directed,

the issue of any one of my children shall consist of but one child it is my will, that such issue or descendant shall have but fifty per centum of what would otherwise be payable to the parent or ancestor if living, and that the other fifty per centum be distributed between my descendants according to the statutes of this Commonwealth regulating the distribution of intestate estates."

The property now held by the petitioner consists entirely of proceeds of the real estate on School Street, in Boston, described as the "Niles Block" in the above clause of the will, which real estate was sold on or about June 1, 1914, under license granted by the Probate Court by its decree dated April 23, 1914, said sale being made for the purposes of reinvestment. The testator left surviving him his widow, since deceased, and six children, namely: George E. Niles, Henrietta N. Lockwood, Emily H. Niles, Anna H. Niles, Arria N. Morrill, and Sarah F. Niles. George E. Niles died in 1898 survived by Rosamond S. Moulton, G. Caspar Niles, and John A. Niles (who died in 1913 survived by Elizabeth Niles Stevens and John Adams Niles). Henrietta N. Lockwood died in 1905 survived by Emily N. L. Wood, Marion L. Greene, Rhodes G. Lockwood, Philip C. Lockwood, Henrietta N. Tower (who died in 1918 survived by William A. Tower, Richard Lockwood Tower, and Philip Tower), and William N. Lockwood (who died in 1930 survived by Frederic G. Lockwood and Rhodes Lockwood). Emily H. Niles died in 1908 without issue. Anna H. Niles died in 1911 without issue. Arria N. Morrill died in 1914 survived by Samuel Morrill and Gordon N. Morrill. Sarah F. Niles died September 16, 1934, without issue, and the trust created by the will terminated on her death as the last survivor of the children of the testator. The above named eight grandchildren and seven great grandchildren of the testator were all joined as respondents. The question which the petitioner sought to have determined was the proper distribution of the property among the respondents, under the terms of the will. The judge of the Probate Court ordered that the fund be distributed according to the statutes regulating the descent and distribution of in-

testate estates by dividing it into equal shares correspond-
ing in number to the number of grandchildren then living
and deceased grandchildren whose issue were then living,
and that one share should be paid to each grandchild and
one share to the issue of each deceased grandchild taking
by right of representation. From this decision appeals
were taken by certain of the respondents.

At the time the testator executed his will the statutes of
the Commonwealth regulating the descent and distribution
of intestate estates provided that the decedent's property
should be divided in the following manner: "First. In
equal shares to his children and the issue of any deceased
child by right of representation; and if there is no child of
the intestate living at his death, then to all his other lineal
descendants; if all the descendants are in the same degree
of kindred to the intestate, they shall share the estate
equally; otherwise they shall take according to the right
of representation." Gen. Sts. c. 91, § 1. Subsequent stat-
utes amending and reënacting the laws relating to the
descent of property have not substantially changed the
provisions above quoted. St. 1876, c. 220, § 1. Pub. Sts.
c. 125, § 1. R. L. c. 133, § 1. G. L. (Ter. Ed.) c. 190, § 3.
In *Balch* v. *Stone*, 149 Mass. 39, 43, it was held in constru-
ing this section of the statute that those nearest in degree
to the intestate take *per capita* in equal shares while those
in a more remote degree take *per stirpes* or such portion
as their immediate ancestor would inherit if living. This
rule has been followed with approval in *Codman* v. *Brooks*,
167 Mass. 499, 503, *Paine, petitioner*, 176 Mass. 242, 245,
*Boston Safe Deposit & Trust Co.* v. *Blanchard*, 196 Mass.
35, 41, *Thompson* v. *Thornton*, 197 Mass. 273, 277, *Proctor*
v. *Lacy*, 263 Mass. 1, 8. When the testator provided in
his will that "At the decease of the last survivor of my said
children said trust shall cease. The acting trustees under
this my will shall then convey my said estate in School
Street, in fee simple, to such persons as would be entitled
thereto according to the statutes of this Commonwealth
regulating the descent and distribution of intestate estates,
if I were the owner thereof at the decease of the last sur-

vivor of my said children — it being my will that the fee of my said estate on School Street shall remain in my trustees until the death of all my children and that then the same shall vest in my descendants equally according to the statutes aforesaid," his intention, unless otherwise controlled, is manifest that his grandchildren, if all living, should share equally, but that if any were dead leaving issue, these issue should take the parent's share by representation. No other meaning could reasonably be attached to the plain and explicit reference to the statutes. See *Old Colony Trust Co.* v. *Lothrop*, 276 Mass. 496, 500; *Green* v. *Hussey*, 228 Mass. 537.

It is contended by the appellants, however, that this construction of the quoted language is controlled by a subsequent sentence in the same paragraph of the will, and by other provisions therein indicating a division on the basis of the testator's children. The subsequent language of the paragraph upon which the appellants rely is that setting forth that "If at the time of the distribution of the income or principal of my said School Street estate as herein directed, the issue of any one of my children shall consist of but one child it is my will, that such issue or descendant shall have but fifty per centum of what would otherwise be payable to the parent or ancestor if living, and that the other fifty per centum be distributed between my descendants according to the statutes of this Commonwealth regulating the distribution of intestate estates." The appellants contend that this "fifty per centum" clause indicates and explains the meaning which the testator understood and attached to the language which he had previously used in providing for a distribution of the principal of the School Street estate according to the statutes of descent of this Commonwealth, it being contended that the testator did not know the exact meaning of the language of the statute referred to, or that he misunderstood it and believed that the reference to the statute would result in a division *per stirpes* of this property among the grandchildren. This contention is sought to be supported by the fact that the will provided in other paragraphs for a distribution of other property to

surviving children and their issue, said issue to take the parent's share, with a clause to adjust the share of sole issue of a deceased child, and the fact that the income of this particular property was enjoyed by the grandchildren by right of representation. These considerations, while entitled to some persuasive force, are not sufficient to justify an interpretation of the language used to intend a division *per stirpes* of this property among the grandchildren, and thereby negative the express reference in plain terms to the statutes of descent which require a *per capita* division among the grandchildren.

The disposition by the will of other property to the children of the testator and issue thereof by representation was contemplated to be made when some of the testator's children were living. The property now to be distributed was to be distributed only after all the children had deceased. It was not to be distributed to his children as such, but was a distribution to be made to his descendants equally according to the statutes after the death of all his children. The difference in the time of distribution of this property and the other property referred to indicates that the testator intended a different manner of taking by the grandchildren of this property, and that he understood the meaning of the language of the statutes to which he referred. The "fifty per centum" clause with respect to sole issue of deceased children as to other property provided for fifty per centum to be distributed equally between "my other then living children." The "fifty per centum" clause as to the present property provided for a distribution of fifty per centum between "my descendants according to the statutes of this Commonwealth regulating the distribution of intestate estates." The separate and different nature of the distribution intended as to these various items of property is shown and kept distinct throughout. Furthermore, as to one of the other items of property the testator in plain language directed that the property be distributed "equally among my then living children, and the issue of deceased children, such issue to take the parent's share." This language manifests a knowledge on the part of the

testator of the manner of making a *per stirpes* division among his grandchildren if he so desired. Reference to the statutes of distribution in these circumstances is significant. It indicates an intention to depart from the manner of distribution to children and grandchildren of the other items of property disposed of by his will. See *Cammann* v. *Abbe,* 258 Mass. 427, 429, 430. It lends support to the conclusion that the testator understood the significance and meaning of the statute to which he referred.

Similar considerations arise from the fact that the grandchildren, so long as a child of the testator survived, had been enjoying the income of this property by right of representation. See *Gleason* v. *Hastings,* 278 Mass. 409, 412. The will provided that upon the death of any one of the children of the testator, the "trustees shall pay the portion of said income otherwise payable and belonging to such deceased child to his or her heirs at law." The testator could easily have used the same words in the subsequent sentence relative to the final disposition of the property. Yet, he did not choose to do so but chose rather to refer to the statute of descent. The reference to the statute in view of this and other provisions of the will seems persuasive that the testator intended a different mode of distribution of this property and sought to accomplish it by the reference made to the statute, and that he knew the meaning of the language of the statute to accomplish this purpose. No other reason appears to explain this reference to the statute. If he intended the grandchildren to take the parent's share, he could easily have repeated the apt words used for that purpose in other parts of the will. He did not do so. Instead of showing that he misunderstood the meaning and effect of the statute to which he referred, quite the contrary inference is warranted. The will should if possible be so construed to avoid any conflict in its provisions. *Rotch* v. *Emerson,* 105 Mass. 431, 433.

Under the paragraph relating to the Niles Block the income was to be payable to the testator's widow and children in certain proportions. After the death of the widow the income was to be shared equally by the children, the

share of a deceased child to go to his or her heirs at law. At the decease of the last surviving child the trust was to cease, and the principal was to go to the "descendants equally according to the statutes aforesaid." The language of the sentence referring to the statute of descent in and of itself would result in a *per capita* division among the grandchildren. The words of this paragraph of the will, then, in their accepted meaning, called for an enjoyment of the income of this property *per stirpes* among the heirs at law of the testator's children until his last child died, and then a *per capita* division of the property among the descendants nearest in degree. The next sentence provides for a contingency not now material, and then follows the "fifty per centum" clause. It provides for two situations: that arising at the time of the distribution of income, and that arising at the time of the distribution of principal. The testator then states, without precisely distinguishing the two points of time as to the method of distribution, that if "the issue of any one of my children shall consist of but one child it is my will, that such issue or descendant shall have but fifty per centum of what would otherwise be payable to the parent or ancestor if living . . . ." This clause provides for the two situations presented by the previous sentences of this paragraph, in harmony with a construction of the language used, namely, distribution to mean, as to principal, a *per capita* distribution among descendants nearest in degree after the death of all the testator's own children, and as to income, a stirpital distribution among heirs at law while any of the testator's own children lived. This may be accomplished by construing the phrase, "issue of any one of my children shall consist of but one child," to mean not only a single child of the testator's own child at the time of distribution but a single child in any line of descent from the testator at the time of distribution of principal. By construing "child" to mean "person" this result may be reached (see *Mullaney* v. *Monahan*, 232 Mass. 279, 283, 284) though, taken in its literal meaning, it does not follow that "child" refers only to a child of one of the testator's own children. It could as

well refer to any only child in the line of descent if such child were to inherit by right of representation. The previous phrase of this sentence, "issue of any one of my children," is here to be construed as inclusive of the whole line of lineal descendants from any one of the testator's children. *Welch* v. *Colt*, 228 Mass. 511, 515. Such a construction is further supported by the phrase, "what would otherwise be payable to the parent or ancestor if living." As no child of the testator could recover any of the principal, it is not reasonable to believe that the testator meant as to principal by the words "parent or ancestor" only his own children. The alternative reference with the use of the word "ancestor" would indicate that the provision would apply to persons in a later generation than that of the children of the testator, which would be in accordance with the express reference in the previous sentence to the statute of descent as the method of distributing the principal of this property. As to income the word "parent" would cover the case, and the same is true as to principal if the appellants' contention were adopted. The word "ancestor" would then become superfluous. It seems, however, to have been put into this clause with a distinct meaning. When applied to the sentence distributing principal in accordance with the reference to the statute of descent, it can be given one. The apparent inconsistency in this paragraph can reasonably be determined in this manner. It does no violence to the language used. The words should be read in the light of the plain reference in the preceding sentence to the statute of descent and the presumed intent of the testator that the various parts of the will should have some significance and meaning and form parts of a consistent whole. The apparent inconsistency would seem to have resulted from an attempt to consolidate into one clause the "fifty per centum" clause as applied to both income and principal, which were to be distributed in different ways. The reference to the statute of descent is plain. Persons are assumed to know the meaning of the terms they use unless there is something to show the contrary. *Proctor* v. *Lacy*, 263 Mass. 1, 9. The con-

trary is not shown by a different method of distribution of other property in this will. See *Cammann* v. *Abbe*, 258 Mass. 427, 429, 430; *Old Colony Trust Co.* v. *Lothrop*, 276 Mass. 496, 500; *Gleason* v. *Hastings*, 278 Mass. 409, 412. The "fifty per centum" clause does not do so. That clause is, in any view of the language used, in harmony with the other provisions of the paragraph with respect to income. It conflicts if at all only as to division of principal. The clear language of the sentence distributing principal could not be controlled thereby. When the testator provided that the property shall vest "in my descendants equally according to the statutes aforesaid" after the decease of all his own children, he clearly showed that he knew what was accomplished by the reference to the statute. Equally to his descendants when all his children were dead could mean but one thing as to his grandchildren. That sentence sets forth in plain, unequivocal language the intention of the testator. The "fifty per centum" clause provides for a situation which in fact never arose. The dominating purpose of the testator as to the method of distribution of his estate is to be gathered from the sentence referring to the statute of descent where, as here, it has not been modified or controlled by any subsidiary provision. *Malcolm* v. *Malcolm*, 3 Cush. 472, 477. The general clause providing the method of distribution should prevail. If any error is presumed to have been made, it arises with respect to the "fifty per centum" clause, and not with reference to the distribution of principal by reference to the statute of descent in plain and unequivocal terms. The testator's general intent is clearly expressed and must prevail.

It follows that the decree for distribution entered in the Probate Court should be affirmed.

*Ordered accordingly.*